JOHN S. DAVENPORT, Respondent, *against* THE LONG ISLAND INSURANCE COMPANY, Appellant.

(Decided June 5th, 1882.)

A policy of insurance against fire provided that, in case of loss, if the parties failed to agree as to the amount of damage, it should be ascertained by appraisal by two appraisers, one selected by each party, and an umpire to be selected by the appraisers. A loss having occurred, and the parties not agreeing as to the amount of damage, each appointed an appraiser in pursuance of the policy; the appraisers, however, failed to agree as to the choice of an umpire, but for this, it did not appear that either of the parties was in any way responsible. *Held*, that the insured was not thereupon entitled to bring an action for the insurance against the insurance company; that before resorting to an action he should do everything in his power to have the damage ascertained in the mode provided for in the contract; and that it was his duty at least to propose the selection of new appraisers.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*F. W. Hubbard*, for appellant.

*Bangs & Stetson*, for respondents.

CHARLES P. DALY, Chief Justice.—It was provided by the terms of the policy, that in case of loss the amount of damage might be determined by mutual agreement between the company and the assured, or, failing to agree as to the amount of damage, that the same should, at the written request of either party, be ascertained by an appraisal and estimate by competent and impartial appraisers, one to be selected by each party ; and that the two so chosen should first select an umpire to act with them in case of their disagreement ; and that if the appraisers failed to agree, they should refer the

difficulties to the umpire ; and the award of any two, in writing, under oath, should be binding and conclusive, as to the amount of such loss or damage, but should not decide as to the validity of the contract or to any other question, except the amount of such loss or damage.

The plaintiff and the defendant having failed to agree, a determination of the amount of damage by arbitration in the mode provided for by the contract was a condition precedent, the parties having by their contract provided how, in an event that has occurred, the damage was to be ascertained.

It is well settled that this is a condition to which the courts will give full effect, and that before the assured can bring an action at law to have the amount of damage determined by the ordinary legal tribunals, he must show that he has done everything on his part, which could be done by him, to carry this condition into effect.

Indeed, it has been said, that under such a contract, there is, in the absence of fraud, no cause of action, either in law or in equity, unless the award is made (*President of Delaware, &c., Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 267 ; Story's Equity Jurisprudence, 1457a ; *Herrick* v. *Belknap*, 27 Vt. 673), which is probably going too far. Some of the cases even go to the length of holding that no action lies until the award is made (*Scott* v. *Avery*, 5 H. L. 811 ; 8 Exch. 417 ; *Braunstein* v. *Accidental Death Ins. Co.*, 1 Best & S. 782 ; *Treadman* v. *Holman*, 1 Hurls. & C. 72).

I think, however, that the true rule is the one laid down in *United States* v. *Robeson* (9 Pet. 327) that where the parties, in their contract, fix upon a certain mode by which the amount to be paid shall be ascertained, the party who seeks to enforce the agreement by an action in the ordinary legal tribunals must show that he has done every thing on his part which could be done to carry this provision of the agreement into effect, and this, in my judgment, has not been shown in this case.

There is no contradiction as to the facts. The plaintiff and company could not agree as to the amount of damage, and the company notified him in writing that there must be an

Davenport *v.* Long Island Ins. Co.

appraisement. Thereupon the plaintiff appointed an appraiser and the defendant appointed another, the duty of the two thus appointed being first to select an umpire in the event of disagreement. They met together for that purpose, and it was agreed between them that the umpire should be a machinist, because the property injured or destroyed consisted largely of the machinery of a paper mill ; and the appraiser selected by the plaintiff was acquainted with machinery, being a paper manufacturer, whilst the one selected by the defendant was not, being simply a builder. It was further agreed between them that each should send the names of three machinists, and that Young, the appraiser selected by the plaintiff, might name machinists who had been employed by him. Dobbs, the defendant's appraiser, not being acquainted with any machinist, had an interview with Dr. Kendrick, who acted as an appraiser for some of the companies in interest, who furnished Dobbs with the names of some machinists from which Dobbs selected four, the names of which he was about to send to Young, when he received a letter from Young, in which the latter stated that in looking over the lists of machinists with whom he was acquainted he found it "hard to name a list of machine men" that he had not dealt with, and that Dobbs would probably object to ; that he could not see that it was material that the third man should be a machinist ; that all that was necessary was that he should be a fair and unprejudiced man ; and he gave Dobbs five names—the president of a bank, a manufacturer of axes, a dealer in machinery, and two paper manufacturers. Dobbs then withheld his submission of names and replied by letter that he understood that a machinist should be selected ; that he had prepared a list and had it ready to send to Young that day ; that he could not accept the parties named by Young and do justice to the parties for whom he was acting ; that it might as well then be understood that he would not accept for the third man any one but a practical machinist who was satisfactory to him ; that he had his list ready to submit when Young was ready to submit his list to him. Four days afterward Young wrote Dobbs, stating that he had deferred answering, thinking

Dobbs might reconsider his refusal and forward him (Young) a list of the gentlemen whom he nominated for an umpire; and that he understood his letter as practically refusing to agree upon any one, unless it should be a man of Dobbs' own selection; that he had sent Dobbs a list of gentlemen who were all acquainted with machinery; that as he had written to him he was unable to send him a list of men who were then in the trade, and that Dobbs refused any others; that he had notified the plaintiff that Dobbs refused to join him in the appointment of an umpire, and that he would consider himself discharged from any further connection in the matter. Upon the receipt of which letter all further communication between the two ceased, Dobbs doing nothing further after the receipt of this letter.

All that appears from these facts is that the two appraisers failed to agree upon a third, for which failure neither the plaintiff nor the defendant were in any way responsible, from anything that appears in the evidence. The failure of the appraisers selected by the respective parties to agree upon a third as the umpire is one of those incidents that sometimes occur, and it does not follow, because this takes place, that this provision in the contract is at an end, and that the plaintiff may at once resort to his action to have the damages determined by the ordinary legal tribunal.

In Altman v. Altman (5 Daly, 436), each of the parties selected an arbitrator, and the arbitrators so selected had several meetings to consider the subject submitted to them, but failed to agree as to the amount of the award, or as to the choice of the third arbitrator. In that as in this case the plaintiff brought his action, and upon the trial his complaint was dismissed. He appealed to the general term, and the judgment given against him was affirmed.

I said in that case what is equally applicable in this, that it did not follow, because the two arbitrators selected could not agree upon a third, that an arbitration was impossible; that if they could not agree, it was for the plaintiff, before resorting to his action, to propose to the defendant the selection of two others in place of those who could not agree upon

Davenport *v.* Long Island Ins. Co.

a third; that if the defendant had then refused to do so, or if the plaintiff could show that the disagreement was brought about by the defendant's instrumentality, for the purpose of preventing an award, or anything from which it appeared that he was acting in bad faith, or interposing obstacles, so that no award might be had, the position of the plaintiff would be different; that as the defendant, in that case, was to pay such sum as the good will of the business was decided by the arbitrators to be worth, the law would not allow the defendant to evade his responsibility by preventing the making of any award; recognizing that if, through his acts or bad faith, or from any other cause, an arbitration became impossible, the plaintiff would have a right to resort to his action.

In the present case, I do not think that the plaintiff has complied with the rule above referred to, which requires him to do everything in his power to have the agreement carried into effect and the damage ascertained, in the mode provided for in the contract.

Having been notified by the appraiser selected by him of the failure of the two selected to agree upon a third as an umpire, it was his duty at least to propose to the defendants that they should each select new appraisers, that the condition precedent might, in good faith, be complied with, instead of which he at once resorted to his action, upon, I suppose, the assumption that this provision in the contract was at an end, so that an arbitration in compliance with it was impossible, a conclusion that by no means followed.

The failure of the two appraisers selected to agree upon a third was not an extraordinary or unusual occurrence. It occurred in *Altman* v. *Altman* (supra), and I have known several other cases in this court where this difficulty arose.

It is an obstacle for which neither of the principals are answerable, unless they have had something to do in bringing it about, and where an unanticipated event like this takes place the obligation is upon both of them to do what they can to remove it by substituting others for the disagreeing appraisers.

I am of opinion, therefore, that, as in *Altman* v. *Altman* (supra), the defendant's motion to dismiss the complaint should

have been granted, and for this error that the judgment should be reversed and a new trial ordered; costs to abide the event.

VAN BRUNT and J. F. DALY, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.