# THE CONNECTICUT FIRE INSURANCE CO. OF HARTFORD *vs.* AARON COHEN.

*Fire Insurance—Stipulation as to Appraisal of Loss—Failure of Appraisers to Agree Upon Umpire—Right to Sue on Policy Without Appraisement.*

When a policy of fire insurance provides that the amount of a loss thereunder shall be ascertained by an appraisement, each of the parties appointing one appraiser who are to select an umpire, and that no action shall be brought on the policy until after such appraisement, then if the insured appoints an appraiser in good faith but no appraisement is made because the two appraisers fail to agree upon an umpire, a selection being prevented chiefly by the appraiser of the insured, such failure to obtain an appraisement of the loss, being without the fault of the insured himself, is not a bar to his right to sue on the policy.

An appraiser appointed under the arbitration clause of a fire insurance policy is not the agent of the party appointing him, but should act upon his own judgment and be free from the control of both the insured and the insurer.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*George Whitelock* and *John B. Deming*, for the appellant.

For the purpose of this appeal the evidence of Likes must of course be taken as true, although it is in part contradicted by that of Appelfeld, and the jury should have been allowed to determine the question of credibility. The ascertainment of the amount of the loss by appraisement is a condition precedent to the payment of the sum of money for which the insurance company is liable. *Caledonian Ins. Co.* v. *Traub*, 83 Md. 533. Particularly must the assured show an appraisement when he has demanded it and an arbitration agreement has been actually entered into. *Hamilton* v. *London & Liverpool & Globe Ins. Co.*, 136 U. S. 254. And the insurer is entitled to have the jury pass upon the conduct of the parties and their respective appraisers where the pleadings and the evidence raise an issue of misconduct or bad faith of the plaintiff or his appraiser, in a case in which an appraisal has been demanded in conformity with the provisions of a policy in the standard form.

Appelfeld's conduct (if the jury believe the defendant's evidence) in the negotiations for the selection of an umpire was tantamount to a refusal to go on with the arbitration, and as such was a valid defense to an action on the policy. The lower Court in refusing the defendant's prayers virtually held that an assured is not bound by the acts of his appraiser, even when the failure of the arbitration is directly traceable to those acts; and further, that the assured is under no obligation to inquire into the reason for the failure of the arbitration, but may prosecute an action on the policy in complete disregard thereof.

The rules governing the conduct of principals when an appraisal under a fire insurance policy has been entered upon, are not different from those governing principals in any other

species of arbitration. *Caledonian Ins. Co.* v. *Traub*, 83 Md. 531. It was thus Cohen's duty to inquire of his arbitrator as to why he could not go on; and finding him in fault, he (Cohen) should have appointed another appraiser. *Davenport* v. *Long Island Ins. Co.*, 10 Daly (N. Y.), 535.

Were it otherwise, the object of the policy and the arbitration agreement would be defeated, and no award could ever be reached, if it should happen that the umpire first proposed by either appraiser should not be acceptable to the other. In this way it would be possible for any party to an insurance contract disposed to act in bad faith, or his appraiser, to violate with impunity the letter and spirit of his agreement, by submitting to the other appraiser, as umpire, the name of a partisan whom his colleague could not accept (without taking the element of fairness out of the result); but whom he would be compelled to accept, if the ruling of the lower Court be considered as the law in such cases.

In instances like the present where the failure of the arbitration is relied upon by the defendant company, and the failure is proved to be the result of the misconduct of the assured's appraiser, it is not necessary that the company should show that the misconduct complained of was procured by the assured, nor even that he was cognizant of it; and it will be sufficient to show misconduct of the appraiser alone. This question is distinctly adjudicated in the case of the *Caledonian Insurance Company* v. *Traub*, 86 Md. 86, where the precise question was raised by the pleadings. *Brock* v. *Dwelling House Ins. Co.*, 102 Mich. 583; 26 L. R. A. 623; *Chapman* v. *Rockford Ins. Co.*, 89 Wis. 572; 28 L. R. A. 405; *Uhrig* v. *Williamsburg Co.*, 101 N. Y. 362; *Bishop* v. *Agricultural Ins. Co.*, 130 N. Y. 488; *Davenport* v. *Ins. Co.*, 10 Daly, 535.

*Jacob J. H. Mitnick* and *Charles F. Harley*, for the appellee.

There was no evidence legally sufficient to show that Applefeld's fault prevented the appraisement. Besides, he was not the "plaintiff's appraiser." He was the appraiser named by the plaintiff. He was not acting as the *agent* of the plaintiff.

It is conceded that, if the failure to appraise had been caused by the fault of the *plaintiff*, he could not have recovered. *Caledonian Ins. Co.* v. *Traub*, 83 Md. 533; *Ibid.*, 86 Md. 88. This is the position which is taken by the defendant in its pleading. The prayers, however, present a view different from the pleading, and ask the Court to rule that the prevention of the appraisement by an appraiser, is a bar to action. This, we submit, is not the law. The fault of an appraiser can vitiate an award ; but, without fault on the part of the plaintiff, the appraiser's conduct is no bar to an action.

The appraiser, after his appointment, is a judicial officer, and not the agent of the party appointing him. *L. D. Hickerson & Co.* v. *German American Fire Ins. Co.*, 32 L. R. A. 172; *Hartford Fire Ins. Co.* v. *Bonner Co.*, 44 F. R. 158. In case of misconduct on the part of the appraiser, even the party appointing him has a right to refuse to be bound by the award. The appraiser's fault cannot be imputed to the plaintiff, unless he participates therein ; and the prevention of an appraisement by an appraiser cannot bar a recovery, unless the plaintiff has committed some wrong or failed to perform some duty. The plaintiff, having suffered a loss, is entitled to recover, if he himself is free from fault.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Baltimore City Court in favor of the appellee in an action of *assumpsit* against the appellant company on a policy of fire insurance. The policy is in the standard form, insuring to the extent of $2,000 merchandise located in the appellee's store in Baltimore City. It contains the usual clause providing that in the event of a loss by fire to the insured goods and a disagreement as to the amount of the loss it shall be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, the two so chosen to first select an umpire and the appraisers then to estimate and appraise the loss, and failing to agree to submit their differences to the umpire, the award in writing of any two to determine the amount of the loss.

The policy further provides that the loss shall not become payable until sixty days after due notice and proof "including an award by appraisers when appraisal has been required" and that "No suit or action on this policy for the recovery of any claim shall be sustainable in any Court of law or equity until after full compliance by the insured with all the foregoing requirements nor unless commenced within twelve months next after the fire."

The insured goods were damaged by fire on August 26th, 1901, while the policy was in full force. A disagreement as to the amount of loss caused by it having arisen between the appellee and the adjuster representing the company, the appellee requested that the extent of the loss be ascertained by an appraisement. The appellee named Louis Applefeld as one of the appraisers and the appellant named Albert H. Likes as the other and a formal agreement for an appraisement was drawn up and signed by the parties on October 29th, 1901. This agreement authorized Applefeld and Likes (together with a third person to be first appointed by them as required by the policy of insurance and to act as umpire on matters of difference only) to appraise and estimate the actual cash value of and the loss and damage by fire to the property described in the policy.

The two appraisers failed to agree upon an umpire and as a result no appraisement was made. Each appraiser was a witness in the case and gave his version of the cause of their disagreement. The evidence, although conflicting, tends to prove that the appraisers met promptly after their appointment and three names were proposed, two by Applefeld and one by Likes, of persons from whom to select the umpire, but after taking a day for reflection each rejected the name or names suggested by the other. After that interview no further attempt seems to have been made to proceed with the appraisement. Likes testified that he rejected Applefeld's nominees partly because he had reason to believe that they had sold some of the insured goods to Applefeld, although it does not appear that he informed the latter of his reasons for the rejection.

Applefeld gave as his reasons for rejecting Likes' nominee that he did not know him. He further testified that he requested Likes to suggest additional names, but the latter refused to do so. Likes on the contrary testified that when no choice of an umpire was made from the three names first mentioned he at that same interview proposed to submit a list of six names of representative business men of Baltimore and let Applefeld select one of them, but the latter rejected the proposition. Applefeld testified that when he declined to accept the person proposed by Likes for umpire Likes said, "if you are not satisfied with him I will get out of it." Likes denied having said so, but he admitted having told Mr. Deming, the company's adjuster, that he would prefer to step out, and let them get another appraiser in his stead. There was also testimony tending to show that after the failure of the appraisers to select an umpire, the company's adjuster called on the appellee's attorney and told him that Likes would resign as an appraiser and that the company was considering whether they would name another appraiser in his place and that he, the adjuster, would let the attorney know in a few days, but he never gave him any further information on the subject.

The effort at an appraisement which was initiated on October 29th, 1901, having produced no practical result up to December 24th, 1901, the appellee on that day brought the present suit on the policy. The appellant filed the general issue pleas and also a special plea setting up the terms of the policy in relation to an appraisement of the amount of loss in case of a fire and a disagreement as to the extent of the loss resulting therefrom and averring that a disagreement as to the amount of the loss by the fire had occurred and that appraisers had been selected, the agreement for an appraisement had been executed and that the defendant had in good faith done all in its power to procure the making of the appraisement but that the appraisement was still pending and unconcluded.

To this plea the appellee replied 1st. That the appraisement had been abandoned by the appellant. 2nd. That the failure to appraise was not caused by the fault of the appellee; and

3rd, that the failure of the appraisers to select an umpire and the abandonment of the appraisement had occurred without fault on the part of the appellee. The issue was made up by rejoinders to these replications.

There is but one bill of exceptions in the record and that brings up for our review the action of the Court below in rejecting the defendant's 1st and 2nd prayers. The prayers are as follows:

1st. If the jury shall find that the plaintiff's appraiser Louis Applefeld prevented the selection of an umpire on matters of difference between the appraisers named in the agreement of October 20th, 1901, offered in evidence, and that there has been no appraisement and estimate of the actual cash value of, and the loss and damage by fire to, the property of the plaintiff described in the defendant's policy of insurance as stipulated in said agreement then the verdict of the jury must be for the defendant.

2nd. If the jury shall find that the failure to reach an appraisement and estimate of the actual cash value of and the loss and damage by fire to the insured property of the plaintiff in accordance with the agreement of October 29th, 1901, offered in evidence was due to the failure of Louis Applefeld, the plaintiff's appraiser, to do in good faith all that he could reasonably be expected to do to agree with the defendant's appraiser Albert H. Likes upon a suitable umpire in accordance with said agreement then the verdict of the jury must be for the defendant.

These two prayers plainly present the proposition that an appraiser, named in such an agreement as appears in this record, is to be regarded as the agent of the party who nominated him in so far at least that he can, without the co-operation or connivance of that party, deprive him of the entire fruits of his insurance by pursuing a policy of inaction or bad faith in performing the duties of the appraisement. To that proposition we cannot give our assent. It is fundamental to the conception of such an appraisement, which is in effect an arbitration, that the persons selected to make it should be free from the control or direction of the respective parties whose interests have been confided to them and should act independently and upon their own judgment. If it could be shown that an ap-

praisement had been arrived at through pressure or control exercised over the appraisers or any of them by one of the parties to the submission that fact would be sufficient to avoid the appraisement.    This is equally true whether an entire controversy is covered by the arbitration or, as in the present case, only a single element of it is submitted for determination.    It being thus the duty of the parties to the submission to abstain from all interference with the appraisers it would be manifestly unjust, when they have observed such abstinence, to hold them responsible for the negligence or misconduct of the appraisers. In order to defeat the rights of a party to a submission to an appraisement by reason of the conduct of the appraiser the evidence should connect the party himself with that conduct. The legal principles involved in this case have already been passed upon by this Court in the *Caledonian Ins. Co.* v. *Traub*, which three times has been before us, in 80 Md. 214, 83 Md. 533, and 86 Md. 86.    The policy of insurance which formed the subject of that suit was similar in its terms to the one now under consideration and contained a like provision for an appraisement of the amount of loss in case of a fire.    After a fire had occurred appraisers to determine the amount of loss were appointed, under that provision, and they selected an umpire and the three had partly done their work when the appraiser who had been nominated by the assured withdrew without any apparent good reason.    The other appraiser and the umpire then completed the appraisement.  It therefore became necessary for the Court to pass upon the effect and legal consequences of the provisions of the policy relating to an appraisement.    The appraisement in that case was held to be not binding on the parties because it had not been made in accordance with the stipulations of the policy which contemplated joint action by both appraisers at every stage of the arbitration, the umpire having had no authority to act except where they differed in their estimates.    In the Court's opinion in that case in 83 Md. 533 it is said: "The withdrawal of the appraiser appointed by the insured without any apparent good reason and with no explanation except such as is given by the tele-

gram above mentioned ought to have been the subject of an inquiry by the jury. It ought to have been left to them to determine whether the failure of the appraisement was in any way caused by the agency or procurement of the insured ; * * *. On the hypothesis that Reinhart (the withdrawing appraiser) was their agent they would be responsible for his action, and if it caused the failure of the appraisement there can be no recovery in this suit. Because this inquiry was not submitted to the jury in any of the plaintiffs prayers the judgment must be reversed. *If the appraisement failed without the fault of the insued the failure would not be an impediment to their right of recovery* if they could maintain their suit upon other grounds."

The law as thus stated was affirmed when the case was here for the last time in 86 Md. 86, the Court then prefacing its opinion with the statement that, "On the former appeals the law of the case was fully discussed and finally settled and there are but few new questions presented for decision now." The appellant contends that, notwithstanding this distinct affirmance of the Court's reasoning and conclusions in the former appeals, the opinion in 86 Md. must be regarded as having modified the law because of the presence in that opinion of the statement : "Though it would have been undoubtedly competent for the appellant to show that the failure of the appraisers or arbitrators to reach a conclusion was due to the misconduct or bad faith of the appellees or their agent Reinhart or their appraiser Rosenfeld." Although that expression apart from its context apparently gives color to the appellant's contention it must be observed that it was used in affirming the action of the lower Court in withholding from the jury certain interrogatories, which the appellants sought to require them to answer, because there was no evidence in the case "which could possibly furnish the jury with an answer to them." The expression as thus used was not necessary to the determination of that matter and it was not intended to reverse or modify the full and deliberate expressions used in the opinion upon the former appeal defining the effect upon the

rights of the insured of a failure to complete an appraisement, without his fault. We regard the propositions asserted in the opinion in 83 Md. in *Traub's case,* as conclusive of the present appeal in so far as to require us to hold that unless the jury were satisfied from the evidence in the case that the failure or abandonment of the appraisement was caused by the fault of the appellee, it constituted no impediment to his right to recover. The rejected prayers of the defendant failed to submit that question to the jury and were for that reason properly rejected.

The conclusions which we have reached in the case now under consideration and in *Traub's case* are not in conflict with the weight of authority elsewhere. The cases all agree that when the policy provides for ascertaining the amount of loss by appraisement, both the insured and the insurer, who have submitted the amount of a loss to appraisement, must act in good faith and each must do his part to have the appraisement completed, but only one case, so far as we are informed, has held that the failure of an appraisement through the conduct of the appraisers, without the fault of the insured, interposed any impediment to his right to recover on his policy. Ordinarily the insured does his part toward the success of the appraisement by uniting in good faith in the selection and appointment of the appraisers and furnishing them all needed facilities and opportunities for the inspection and examination of the insured property and the ascertainment of its value and then abstaining from all attempts to influence or interfere with them in the discharge of their duty.

In a number of cases cited by the appellant the insured was held entitled to recover on his policy in spite of the failure of an attempted appraisement of the amount of his loss when that failure had been caused by the unreasonable attitude and conduct of the insurer's appraiser. From these cases the appellant contended that it must be held conversely that the insured was barred from recovering on his policy when the appraisement had been defeated by the acts of the appraiser nominated by him. That does not necessarily follow. It is

in our judgment sufficient, to maintain the right of the insured to sue in such cases, to find that the failure of the appraisement was without fault on his part, and it is unnecessary for that purpose to ascertain that the insurer was the cause of the failure: The title of the insured to maintain his suit rests upon his policy and not upon the conduct of the insurer in relation to the appraisement. He may, when the policy provides for an appraisement, be estopped from bringing his suit by his own conduct in reference to the appraisement, but if his conduct in that connection be free from fault he is not estopped from suing by the failure of the appraisement from other causes.

It is further to be observed that in most of the cases cited by the appellant in this connection there was evidence tending to implicate the insurance company itself in the conduct of the delinquent appraiser. That is true of the cases of *Uhrig* v. *Insurance Co.*, 101 N. Y. 362; *Hamilton* v. *Insurance Co.*, 136 U. S. 255; *Chapman* v. *Insurance Co.*, 28 L. R. A. 405; *Bishop* v. *Insurance Co.*, 130 N. Y. 488, and *Hickerson* v. *Insurance Co.*, 32 L. R. A. 172. In the last mentioned case, which was cited by the appellee, but was much relied on by the appellant in argument, the Court in its opinion not only held that the appraisement clause of the policy was inoperative because there had been no real effort to agree upon the loss by the parties themselves, but also found from the evidence that the appraisement had " failed in consequence of the perverse conduct and want of good faith of the *insurance companies* represented by their adjuster and appraiser." All of these cases were in substantial accord with us upon the main question in this case in refusing to hold that the insured was prevented from maintaining a suit on his policy by a failure of an appraisement which occurred without fault on his part.

In the case of *Davenport* v. *Ins. Co.*, 10 Daly, 535, the Court of Common Pleas of New York held that where appraisers had been selected, to fix the amount of loss by a fire under a policy similar to the one now before us, and they failed to agree upon an umpire, the insured, although not at

fault himself, was not entitled to at once institute an action on his policy; that it was his duty to suggest the name of a new appraiser and make further attempts at procuring an appraisement. No authority was there relied on, except that of an earlier case in the same Court. Without meaning to say that there are no circumstances under which it would be the duty of an insured to suggest the name of a new appraiser and make further efforts for an appraisement before bringing suit on his policy, we do not think that the appellee was bound to do so, under the facts of this case, before he brought the present suit.

The judgment appealed from must be affirmed.

*Judgment affirmed with costs.*

(Decided June 29th, 1903. )