# Richmond.

## EDGAR L. HURST v. H. A. HOPE.

March 21, 1929.

The opinion states the case.

*R. B. Spindle, Jr.,* for the plaintiff in error.

*Harry E. McCoy,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action in assumpsit, brought to recover on a *quantum meruit* compensation for services rendered by the plaintiff as a fire insurance arbitrator.

The defendant, Hurst, had insured certain ship supplies, marine hardware, etc., in the sum of $55,000.00. There was a fire. He and the insurance companies were unable to reach an agreement. The policies of insurance provided that in such a contingency one arbitrator should be appointed by the insured and one by the insuring companies. Each was to pay its own appointee, and in the event of their inability to reach a judgment, they in turn were to select an umpire, whose pay was to be divided equally between the companies and the insured. Hope was selected by Hurst

and Seddon by the companies. Their differences made the services of an umpire necessary, and Corey was called in to serve in that capacity. The final award was $43,655.89.

There was no contract fixing the amount of the compensation to be paid to the plaintiff, and he relied, as we have seen, upon a *quantum meruit* recovery.

From the evidence it appears that the companies' arbitrator first fixed the loss at $14,000.00, which was subsequently increased to $43,655.89, the sum finally agreed upon. The plaintiff said that he was once offered $1,400.00, but that the defendant afterwards refused to abide by his agreement and finally reduced his offer to $300.00, which was declined. Hurst's evidence is to the effect that he made no such offer, but that he did once ask the plaintiff if he was willing to accept $1,000.00, and was told that he must pay $1,400.00 or nothing. He also said that Hope figured his right to recover on the basis of a five per cent. commission. He stated that he was offered $37,500.00 before any arbitrators were appointed, and that his recovery was increased by the appraisal in an amount only slightly exceeding $6,000.00. He did say that he promised to pay customary compensation.

There was a jury's verdict for $1,400.00, which was confirmed by the trial court, and to that final judgment a writ of error has been awarded the defendant.

■ Two methods of calculation are adopted in such cases. Sometimes the arbitrator is allowed a *per diem* of from $25.00 to $50.00, and sometimes he is paid five per cent. on the award when its amount is less than $100,000.00.

The property destroyed was of a special character and intended for maritime fittings and construction. Technical knowledge and information was necessary in

order to reach any intelligent conclusion and this was doubtless the reason which led to the selection of plaintiff as one of the arbitrators. He was a marine architect, educated at the Massachusetts Institute of Technology. His competency is not questioned. Immediately upon his selection he went to work, and, among other things, consulted twenty-five or thirty manufacturers that he might ascertain the actual value of the articles destroyed. The amount of the work which he did is not questioned, but it is said that he should, in no event, be paid for time other than that occupied in the appraisement proper, which took only seven days, and moreover that his employment was in fact illegal in that he was at the time of the appraisement in Hurst's employment.

To support this position sections 4308 and 4309 of the Code of Virginia are cited and relied upon. They are:

4308. "The arbitrators and umpire selected to ascertain the loss sustained by any claimant upon any policy of insurance on any property in the State of Virginia shall be citizens and actual residents of the State of Virginia, unless otherwise agreed between the parties."

4309. "The said arbitrators and umpire, before acting as such, shall take an oath to faithfully discharge their duties, and that they are not in any manner in the employment of nor related to any individual affected thereby, or in the employment of any insurance company."

It may readily be conceded that neither the insured nor the insurance companies should select as their arbitrators men on their pay roll.

"It is fundamental to the conception of such an appraisement—which is in effect an arbitration—that

the persons selected to make it should be free from the control and direction of the respective parties whose interests have been confided to them, and should act independently and upon their own judgment." *Connecticut, etc., Insurance Company* v. *Cohen*, 97 Md. 294, 55 Atl. 675, 99 Am. St. Rep. 445.

This does not mean that the arbitrator is not to be paid by the party who retains him. He must be so paid by the express terms of the contract of insurance.

■ So far as is shown by the record, Hurst and Hope were strangers up to the time of his selection. If we were to adopt the construction contended for, the statute would be inoperative, for the arbitrator when secured would immediately become an employee, and would, by the very act of his selection, be made ineligible to serve. Certainly anything which he afterwards did to qualify himself to serve would disqualify him. All that the statute means to say is that he shall not be regularly retained; that there must be no continuity of employment. "Employment" and "employee" are terms sometimes used to cover services of every kind, but not always. An attorney serving as division counsel for a railroad, and regularly retained, is an employee, (*Seaboard Air Line Railway* v. *Continental Trust Co.*, [C. C.] 166 Fed. 597), while one retained for a single suit is not. (*Hand* v. *Cook*, 29 Nev. 518, 92 Pac. 3).

In *Boston & A. R. Co.* v. *Mercantile Trust & Deposit Co.*, 82 Md. 535, 34 Atl. 778, 38 L. R. A. 97, the court was called upon to distribute funds of an insolvent corporation. Employees were given a preference under the statute. It was there held that not everyone employed was an employee; an insurance adjuster was not. The court went on to say: "The word 'employee' as used in the statute was intended to have a limited

meaning and that it cannot be applied in its broadest sense or as including everyone in the service or employment of a corporation or individual." To the same effect is *Lewis* v. *Fisher*, 80 Md. 139, 30 Atl. 608, 26 L. R. A. 278, 45 Am. St. Rep. 327.

Among other definitions given in Bouvier is this: "It is understood to mean some permanent employment or position."

Tested by these rules, we are of opinion that Hope was not in the employment of Hurst, as that term is used in the statutes. He was retained for special service, and all of the work done by him was done that he might discharge these special duties intelligently. Without this necessary advance information, secured in a proper way, he would have been worthless as an arbitrator. If he is to be paid at all for his preliminary investigation, it is not seriously contended that the judgment is unreasonable, and certainly it is supported by ample evidence. There was nothing immoral or against public policy in anything that was done, and so the judgment must stand unless it runs counter to the statute. The defendant's naked proposition that Hope was, because of his employment, ineligible to serve is untenable.

The judgment of the trial court was plainly right and is affirmed.

*Affirmed.*