COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


CHURCH MUTUAL INSURANCE COMPANY, S.I.

OPINION BY
v.        Record No. 0628-24-2        CHIEF JUDGE MARLA GRAFF DECKER
APRIL 8, 2025

EPHESUS RICHMOND SEVENTH-DAY
 ADVENTIST CHURCH, A/K/A
 EPHESUS RICHMOND SDA CHURCH


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Robert E. Draim (David D. Hudgins; Hudgins Law Firm, P.C., on
briefs), for appellant.

(Stephen E. Heretick; Louis N. Joynes, II; Stephen E. Heretick, P.C.;
Joynes & Gaidies, P.C., on brief), for appellee.  Appellee submitting
on brief.


Church Mutual Insurance Company, S.I. (Church Mutual or the insurer), appeals the

circuit court's ruling sustaining the demurrer of Ephesus Richmond Seventh-Day Adventist

Church (Ephesus).  This ruling resulted in the dismissal of Church Mutual's application to

modify an insurance appraisal award under Code § 8.01-581.011.  The award was made pursuant

to the terms of the parties' insurance contract.  Church Mutual contends that the court erred by

concluding the appraisal award was not an arbitration award reviewable under the arbitration

statute.  The insurer also challenges related legal rulings and factual findings.

We do not consider three of Church Mutual's assignments of error because we conclude

they are waived.  On the merits, based on the language of the insurance contract, we hold that the

circuit court correctly ruled it lacked jurisdiction to review the award under the statute pleaded.

We therefore do not consider the remaining assignments of error because they challenge

determinations that we vacate due to our affirmance of the circuit court's ruling that it lacked jurisdiction. Lastly, we deny the parties' requests for appellate attorney fees and costs.

BACKGROUND[1]

Ephesus contracted with Church Mutual for property insurance. In 2021, Ephesus filed a claim alleging that wind and hail had damaged the church building during the policy coverage period. Church Mutual's inspector concluded that damage to the flat portion of the roof and the church interior resulted from ordinary "weathering" and "footfalls" and that only the sloped portion of the roof and the gutters sustained storm damage. As a result, Church Mutual disallowed coverage for most of Ephesus's claim and issued a check for $59,084.05.

Ephesus challenged the amount paid on its claim. The parties' insurance contract outlined the process for resolving disputes over the dollar amount of claims payments. Form A 100, § C(2) (Jan. 2001). Each party was to select a "competent and impartial appraiser." *Id.* If the two appraisers agreed upon the dollar amount of the loss, their decision would bind both parties. *Id.* If they did not agree, they were to submit their competing appraisals to a previously selected "umpire." *Id.* If the umpire's valuation matched that of either appraiser, the contract provided that the agreed-upon valuation was binding. *Id.*

The appraiser selected by Church Mutual estimated the net replacement cost value, less depreciation and other deductions, at $68,148.78. This estimate entitled Ephesus to an increase of $9,064.73 in the claim payment. The appraiser selected by Ephesus, however, provided a much greater estimated net replacement cost value, less depreciation, of $1,692,642.89. The

---

[1] This Court views the underlying facts pleaded by Church Mutual in the light most favorable to it. *See Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (holding that in reviewing a demurrer, the appellate court "consider[s] as admitted the facts expressly alleged and those [that] fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged" (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001))).

umpire selected by the two appraisers concurred with the higher valuation of almost $1.7 million.[2] He and the appraiser for Ephesus endorsed an appraisal award reflecting that valuation.

Church Mutual asked the circuit court to "modify or correct [the] appraisal award." It relied exclusively on Code § 8.01-581.011, a part of Virginia's Uniform Arbitration Act, Code §§ 8.01-581.01 to -581.016 (VUAA). Ephesus filed a demurrer.[3]

In hearings held in 2022 and 2023, the circuit court conducted what it described as a "bench trial on th[e] insurance roof issue." The parties presented testimony from the appraisers and the umpire about the nature of their involvement in the valuation process. The court also admitted the entire insurance contract into evidence.

During the course of the hearings, Ephesus filed a "renew[ed] . . . demurrer," this time arguing that the appraisal award was not an arbitration award subject to review under Code § 8.01-581.011. Based on this claim, it contended that the circuit court did not have subject matter jurisdiction under the statute pleaded. Church Mutual maintained that the court had jurisdiction to review the appraisal award under the statute cited, but it acknowledged the absence of any "cases on point in Virginia."

The court ruled that the contract of insurance, drafted by Church Mutual, provided for an appraisal, not arbitration. It noted that Code § 8.01-581.011, the statute the insurer relied upon, permitted "modif[ication of] *arbitration* awards exclusively, with no reference to *appraisals*." The court reasoned that the cases Church Mutual cited did not persuade it to treat the appraisal procedure as an arbitration provision. It also made several findings related to the appraisal

---

[2] The appraiser for Church Mutual limited his estimate to the damage sustained by the sloped roof, gutters, and "HVAC units," the only items that Church Mutual's inspector concluded had sustained covered storm damage. The umpire and the appraiser for Ephesus, by contrast, included the damage to the flat roof and the church interior in their calculations.

[3] Ephesus separately asked the circuit court to confirm the award under Code § 8.01-581.09, a different part of the VUAA. The circuit court consolidated the two cases.

- 3 -

itself.[4] Based on those determinations, the court held that it lacked jurisdiction, denied Church Mutual's "[a]pplication to [m]odify or [c]orrect [the a]ppraisal [a]ward," and dismissed the matter with prejudice.

ANALYSIS

Church Mutual argues that the circuit court erred by ruling that Code § 8.01-581.011 did not allow it to modify the insurance appraisal award due to the language of the insurance contract. It also challenges several related legal rulings and factual findings.

I. Rule 5A:20 Deficiencies in Church Mutual's Brief

We hold first that some of Church Mutual's assignments of error are waived based on deficiencies in its brief.

Rule 5A:20(e) requires that the appellant's opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." As Virginia's appellate courts have repeatedly held, "[u]nsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008), *aff'd in part and vacated in part on other grounds*, 279 Va. 52 (2010)), *cited with approval in Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) (applying the Supreme Court of Virginia's "textually similar" Rule 5:27(d)). It simply is not the appellate court's "role . . . to . . . construct a litigant's case or arguments." *Parrish v. Callahan*, 78 Va. App. 630, 647 n.13 (2023) (quoting *Bartley*, 67 Va. App. at 746); *see Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019).

---

[4] The court found that "[t]wo of the three appraisers . . . agreed upon the amount of the loss as required by the contract." It further concluded that "that the appraisal . . . fully satisfied the requirements of [the provision] agreed to by both parties." Finally, it ruled that "the decision of those two appraisers [wa]s binding upon the parties pursuant to the terms of the contract of insurance."

Under certain circumstances, therefore, "where a party fails to develop an argument . . . or merely constructs a skeletal argument," the court may treat the issue as waived. *Harless v. Nicely*, 80 Va. App. 678, 691 (2024) (quoting *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020)); *see Coward*, 295 Va. at 367; *see also Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief or at oral argument). When determining if a waiver has occurred, the Court considers whether the "'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant." *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 685 n.6 (2024) (quoting *Bartley*, 67 Va. App. at 744). Significant circumstances supporting a waiver exist when an appellant's "failure to provide legal argument and authority as required by [the rule] leaves [this Court] without a legal prism through which to view [the] alleged error." *Bartley*, 67 Va. App. at 746; *see Mitchell v. Commonwealth*, 60 Va. App. 349, 353 (2012) (holding that the appellant's citation to one case and one statute was "insufficient to satisfy Rule 5A:20(e)"); *see also Amazon Logistics, Inc. v. Va. Emp't Comm'n*, ___ Va. ___, ___ (Mar. 6, 2025) (applying that Court's similar Rule 5:27(d) to hold that "bad-brief waiver applies to situations in which an appellant makes a cursory argument in support of an assignment of error and fails to provide sufficient legal reasoning, factual analysis, or citations to authority" (quoting *AlBritton v. Commonwealth*, 299 Va. 392, 412 n.12 (2021))).

For the reasons that follow, the Court declines to consider assignments of error two, six, and seven due to Church Mutual's failure to comply with Rule 5A:20(e).[5]

---

[5] The opening brief sets out the standards of review applicable to these assignments of error and references the modification provision of the VUAA in passing. In portions of the analysis section addressing other assignments of error, the opening brief cites Virginia authority about the extent to which arbitration proceedings are binding and authority from other jurisdictions interpreting similar arbitration statutes. None of this authority, however, provides a legal framework for analyzing the second, sixth, or seventh assignments of error.

The second assignment of error involves a challenge to the circuit court's factual finding that Ephesus did not have a copy of the insurance contract until shortly before the second evidentiary hearing. Church Mutual's argument on this issue is two sentences long. It does not cite any relevant law or explain how the court's finding on this point caused it to err in its ruling.

The sixth assignment of error challenges the circuit court's dismissal of the insurer's application to modify the appraisal award "with prejudice." Once again, Church Mutual's analysis of this issue does not provide any law or explain why a dismissal with prejudice on the narrow issue of entitlement to relief under Code § 8.01-581.011 was error.

The seventh assignment of error purports to challenge the sufficiency of the evidence to prove two things—the scope of Ephesus's coverage under the insurance contract and the cost of the repairs necessitated by the covered hail damage, excluding those related to normal aging and neglect.[6] Church Mutual cites no law regarding scope-of-coverage decisions and does not address even the most basic legal principles regarding how an appellate court must view conflicting evidence.

We hold that Church Mutual's failure to develop these arguments in compliance with Rule 5A:20(e) is significant because the failure "leaves [this Court] without a legal prism through which to view [the] alleged error[s]." *See Bartley*, 67 Va. App. at 746. Consequently, the Court treats the second, sixth, and seventh assignments of error as waived.

II. Review of the Appraisal Award Under the VUAA

Church Mutual's remaining assignments of error primarily suggest that the appraisal award, rendered pursuant to the insurance contract, qualifies as an arbitration award that is

---

[6] We assume without deciding that this assignment of error complies with Rule 5A:20(c), which prevents a litigant from challenging a ruling that the lower court did not make unless it specifically assigns error to the court's failure to rule. *See generally Bon Secours-DePaul Med. Ctr. v. Rogakos-Russell*, ___ Va. ___, ___ (Jan. 2, 2025) (holding a court may assume without deciding on a point to resolve an appeal on the best-and-narrowest ground).

reviewable under the VUAA.  As a result, Church Mutual contends that the circuit court erred by sustaining Ephesus's demurrer and denying its application to modify the award under Code § 8.01-581.011 of the VUAA.

## A.  Standard of Review

The standard to be applied when reviewing a ruling on a demurrer is well settled.  "A demurrer tests the legal sufficiency of the facts properly alleged[] and the inferences fairly drawn []from [those facts], but [it] does not admit the correctness of the [pleader]'s legal conclusions." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018).  When an appellate court reviews an order sustaining a demurrer, it "accept[s] as true all factual allegations expressly pleaded . . . and interpret[s] those allegations in the light most favorable to the [plaintiff]," in this case Church Mutual.  *Parker v. Carilion Clinic*, 296 Va. 319, 330 (2018).  Whether these allegations, taken as true, provide a basis for recovery is a question of law reviewed de novo on appeal.  *Ashland, LLC v. Va.-Am. Water Co.*, 301 Va. 362, 374 (2022).  "[T]he construction and application of the terms of an insurance contract . . . are [also] issues of law that [the appellate court] review[s] de novo."  *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 27 (2019) (quoting *Bratton v. Selective Ins. of Am.*, 290 Va. 314, 322 (2015)).  This includes review of "a circuit court's interpretation of contractual language . . . governing arbitration."  *Brush Arbor Home Constr. v. Alexander*, 297 Va. 151, 154 (2019).

Here, although the circuit court heard evidence, the only evidence relevant to this appeal is the insurance contract.  Because the meaning of a contract is reviewed as a matter of law under a de novo standard, the Court does not consider any evidence to which a deferential standard of review would apply.  *Cf. Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382

- 7 -

(1997) ("[A] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings.").

These are the applicable legal parameters that guide our analysis of the issue here.

### B. Appraisal Award Under the Insurance Contract

Virginia has enacted the VUAA, a version of the Uniform Arbitration Act. *See* 1986 Va. Acts ch. 614. The Commonwealth's "public policy favors 'arbitration and the validity of arbitration agreements.'" *City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 344 (2023) (quoting *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 122 (2002)); *see* Code § 8.01-577. Nevertheless, that policy "does not impair the constitutional right of a party to have access to the courts . . . unless that party has, by contract, voluntarily waived those rights." *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161 (2008). As a result, "[a] party cannot be compelled to submit to arbitration unless [it] has first agreed to arbitrate." *NC Fin. Sols. of Utah, LLC v. Comm. ex rel. Herring*, 299 Va. 452, 459 (2021) (alterations in original) (quoting *Mission Residential*, 275 Va. at 161). This outcome is both clear and logical.

Under the VUAA, "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid[ and] enforceable." Code § 8.01-581.01. Courts therefore "rely on the general 'law of contracts' . . . to determine whether a 'valid and enforceable agreement to arbitrate' exists between the parties in any given case." *Boyle v. Anderson*, 301 Va. 52, 60 n.2 (2022) (quoting *NC Fin. Sols.*, 299 Va. at 459). The courts evaluate an agreement between two parties "exclusively from those expressions of the[] intentions [that] are communicated between them." *Phillips v. Mazyck*, 273 Va. 630, 636 (2007) (emphases omitted) (quoting *Lucy v. Zehmer*, 196 Va. 493, 503 (1954)). In other words, "[t]he language of the contract [generally] determines whether a particular dispute is arbitrable." *Brush Arbor Home Constr.*, 297 Va. at 154.

In the event of a dispute over the application of arbitration language in a contract, the court must "construe [it] to determine wh[ether a particular] question[ is one that] the parties agreed to submit to arbitration." *Id.* Simply put, dispute-resolution activity conducted pursuant to a contract is not arbitration if the particular "matters [at issue] . . . are not subject to arbitration under the terms of the [c]ontract." *See Sternheimer v. Sternheimer*, 212 Va. 134, 134-35 (1971) (per curiam) (affirming a refusal to enforce arbitration). Without an agreement to arbitrate a particular point, a party cannot be subject to the arbitration process itself or, by extension, to the provisions of the VUAA that govern judicial review of a resulting award. *See Boyle*, 301 Va. at 56. Further, the burden of proving an agreement to arbitrate rests on the party seeking to use this method to resolve the dispute, here the insurer, Church Mutual. *See Mission Residential*, 275 Va. at 161; *see also Schuiling v. Harris*, 286 Va. 187, 192 (2013) (recognizing that the VUAA does not "prohibit[] the parties from agreeing to limit the scope of its operation").

In examining the dispute-resolution provisions of an agreement for this purpose, the court "should apply 'ordinary state-law principles that govern the formation of contracts.'" *Amchem Prods., Inc. v. Newport News Cir. Ct. Asbestos Cases Plaintiffs*, 264 Va. 89, 97 (2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). And "[t]he canons of construction that . . . govern contracts [generally] also apply to insurance policies specifically." *Erie Ins. Exch.*, 297 Va. at 27.

It is axiomatic that an insurance contract should be interpreted "in accordance with the intention of the parties gleaned from the words they have used in the document." *TravCo Ins. v. Ward*, 284 Va. 547, 552 (2012). "[T]his rule means that a judicial interpretation should conform to the plain meaning that reasonable insurers and insureds likely would have attributed to the words. . . . [P]lain meaning . . . depends not merely on semantics and syntax but also on the holistic context of the word within the instrument." *Erie Ins. Exch.*, 297 Va. at 28. As a result,

"[e]ach phrase and clause of [the] insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the [expressed] intention of the parties." *Copp v. Nationwide Mut. Ins.*, 279 Va. 675, 681 (2010) (quoting *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562 (2009)). If these components "are clear and unambiguous, their terms are to be taken in their plain, ordinary[,] and popular sense." *Erie Ins. Exch.*, 297 Va. at 28-29 (quoting *Gov't Emps. Ins. v. Moore*, 266 Va. 155, 164 (2003)). And to the extent any ambiguity is present, the reviewing court must construe that ambiguity against the drafter, here the insurer, Church Mutual. *See id.* at 29.

We hold, based on our de novo review, that the parties' contract fails to reflect an intention to classify the appraisal process followed in this case as a form of arbitration under the VUAA. *See generally id.* at 25 (analyzing the "Declarations pages" and "various 'Extensions of Coverage'" pages as provisions of a single insurance contract). The insurance contract includes *express* references to the arbitration of disputes between the insurer and the insured in a provision *other than* the one setting out the appraisal process. *See* Form A 253 (Jan. 2017). That usage addresses Church Mutual's agreement to "pay 'defense costs'[] incurred by any insured[] that result from a 'suit' to which th[e] insurance applies." *See* Form A 253, *supra*, § A(1), at 1. In that context, the policy's definition of "[s]uit" includes arbitration. Form A 253, *supra*, § G(13), at 6. The policy expressly provides for "arbitration" in the event that the insurer and the insured "cannot reach an agreement concerning any of the terms of *th[at]* Coverage Form"—the form addressing payment of defense costs.[7] (Emphasis added). Form A 253, *supra*, § F(7), at 3

---

[7] Another category of usage in the parties' contract defines the term "suit" to include arbitration in the context of the insurer's duty to indemnify the insured against various types of *liability to third parties*. *See* Form A 200, §§ A(1), H(18), at 1, 14 (Jan. 2004); Form A 262, §§ A(1)(b), C(1), G(4), at 1, 4, 9 (Sept. 2017); Form A 500, §§ A(1)(a), B(1), F(7), at 1-2, 5 (Jan. 2004); Form A 600, §§ A(1)(a), B(1), F(11), at 1, 3, 7 (Jan. 2004). This usage further supports the conclusion that the contractual appraisal process at issue here does not qualify as an agreement to arbitrate.

(emphasis added). The word "arbitration," by contrast, does not appear in the contract provision covering appraisal awards, the specific provision that forms the basis of this suit. *See* Form A 100, *supra*.

As a result, the terminology in the insurance contract itself resolves the matter before the Court. The contract reflects that the parties agreed to use arbitration as the means for resolving disputes over certain types of defense costs. They used a wholly different term—*appraisal*—in the portion of the insurance contract at issue here. Church Mutual, therefore, has not met its burden of proving that the appraisal award qualifies as an arbitration award under the VUAA. Due to this difference in terminology, the insurance contract does not establish that the parties reached an agreement to classify the appraisal process as an arbitration for purposes of Virginia law.

Dictionary definitions of the words "arbitration" and "appraisal" as used in the contract inform this analysis.[8] *See generally GSHH-Richmond, Inc. v. Imperial Assocs.*, 253 Va. 98, 101 (1997) (using dictionary definitions to determine the meaning of terms in a contract). An arbitration is defined as "the hearing and determination of a case between parties in controversy by a person or persons chosen by the parties or appointed under statutory authority instead of by a judicial tribunal provided by law." *Williams v. Cap. Hospice & Companion Prop. Cas. Ins.*, 66 Va. App. 161, 172 (2016) (quoting *Arbitration*, *Webster's Third New International Dictionary* (1993)), *superseded by statute on other grounds as recognized in Hartford Underwriters Ins. v. Allstate Ins.*, 301 Va. 460, 473-74 (2022). An appraisal, on the other hand—sometimes referred to as an appraisement—is simply the act of "ascertain[ing] value[]." *See Richmond v. Valentine*, 203 Va. 642, 646 (1962) (citing *Appraiser*, *Black's Law Dictionary* (3d ed. 1933)); *McGinnis v.*

---

[8] The VUAA outlines the procedures to be followed but does not specifically define the term "arbitration." *See* Code §§ 8.01-581.01 to -581.016.

*Nelson Cnty.*, 146 Va. 170, 174 (1926) (defining appraisement); *see also Appraisal*, *Black's Law Dictionary* (12th ed. 2024) [hereinafter *Black's*] (recognizing appraisement and appraisal as synonyms); *Smith v. Covington*, 205 Va. 104, 107-09 (1964) (using appraisement and appraisal interchangeably).

The insurance contract here provides for an "appraisal" process that is similar in structure to an arbitration because it involves several ostensibly "impartial" third parties. *See Arbitration*, *Black's*, *supra* (defining arbitration as involving "neutral third parties"). But once again, due to the insurer's use of different terminology, the contract does not prove an intent by *both* parties for the appraisal process to qualify as an arbitration under the terms of the contract. *See Omaha v. Omaha Water Co.*, 218 U.S. 180, 194, 198 (1910) (discussing the "distinction between an arbitration," on one hand, and "an appraisement," on the other, in which "the strict rules relating to arbitration . . . do not apply," and noting that the term "arbitration . . . is often used when [appraisement] is more appropriate"); *Oliver v. State Farm Fire & Cas. Ins.*, 939 N.W.2d 749, 752 n.3 (Minn. 2020) (holding that the past erroneous "use[ of] the terms 'arbitration' and 'appraisal' interchangeably" did not "undermine" the court's recognition of "fundamental differences" between them).[9]

---

[9] The decision in *Hurst v. Hope*, 152 Va. 405 (1929), provides that "[i]t is fundamental to the conception of . . . an appraisement—which is in effect an arbitration—that the persons selected to make it . . . should act independently and upon their own judgment." *Id.* at 408-09 (quoting *Conn. Fire Ins. v. Cohen*, 55 A. 675, 677 (Md. 1903)). In *Hurst*, the Supreme Court of Virginia analyzed a now-repealed statute that set out a procedure similar to the appraisal process in the Church Mutual insurance contract. *Id.* at 408 (citing Code § 4308 (1924)); *see* Code § 38-173 (1950) (containing the recodified Section 4308 language); 1952 Va. Acts ch. 317, cl.1 (repealing Code § 38-173). The statute itself referred to the people valuing the loss as the "*arbitrators* and umpire." *Hurst*, 152 Va. at 408 (quoting Code § 4308 (emphasis added)). As noted, the United States Supreme Court has cautioned against conflating appraisement and arbitration. *Omaha*, 218 U.S. at 194, 198; *see Oliver*, 939 N.W.2d at 752 n.3. Apparently reflecting legislative recognition of this point, Virginia's successor insurance statutes, although not applicable in this case, refer to "*appraiser[s]*" and "umpire[s]," not arbitrators. *See* Code §§ 38.2-2105, 38.2-2122 (emphasis added) (prescribing terms for fire insurance policies in Virginia); *see also* 1952 Va. Acts ch. 317, cl. 2 (enacting Code § 38.1-376, predecessor to

Accordingly, the definitions of these terms further support the conclusion that Church Mutual failed to establish it was entitled to review *under the VUAA* of what was really in dispute—the extent of its liability for coverage under the insurance contract—*under a contractual appraisal process* designed merely to resolve a disagreement over value. *See Appraisement*, *Black's*, *supra* (defining "appraisement" as an "informal" "method . . . for resolving the amount or extent of liability on a contract when . . . liability . . . is not in dispute" and contrasting it with the "quasi-judicial" process of arbitration); *see also* 46A C.J.S. *Insurance* § 1900, Westlaw (updated Feb. 2025) (explaining that "[a]ppraisal establishes only the amount of[,] . . . not liability for[, a] loss under [an] insurance contract, whereas arbitration . . . ordinarily will decide the entire controversy").

We therefore resolve this appeal based on the plain language of the insurance contract and the definitions of the words used in it. Consequently, the Court does not address, under a statutory-construction analysis, whether the term "arbitration" as used in the VUAA can ever encompass the process described as an appraisal in the contract here.[10] *See Hampton Rds. Bankshares, Inc. v. Harvard*, 291 Va. 42, 52 (2016) (applying the principle that appellate courts must decide cases on the best-and-narrowest ground to resolve an appeal based on contract law rather than constitutional interpretation).

---

present Code § 38.2-2122, which contained language referring to appraisers, not arbitrators, and applied only to fire insurance policies).

[10] Church Mutual suggests that whether an insurance appraisal is an arbitration is a question of first impression in Virginia, and it relies on caselaw from other jurisdictions to support its argument that the VUAA permitted review of the appraisal process here. It is true that a state court analyzing a uniform law adopted in that jurisdiction may look to decisions of other states interpreting their own versions of that law. *See Day v. MCC Acquisition, LC*, 299 Va. 199, 207, 212-13, 213 n.9 (2020) (Uniform Commercial Code); *Schefer v. City Council*, 279 Va. 588, 593-94 (2010) (Standard States Zoning Enabling Act). Here, though, we do not consider the out-of-state cases cited because our decision, like that of the circuit court, turns on the language of the parties' contract, not the language of the VUAA.

Finally, based on our conclusion that the circuit court correctly ruled it lacked jurisdiction to consider Church Mutual's application under the VUAA, it also lacked jurisdiction to make factual findings beyond any required for the jurisdictional ruling. *See Knight v. Ottrix*, 69 Va. App. 519, 527 (2018) (holding that the lower court lacked subject matter jurisdiction to consider the petition before it and vacating that court's related finding). Consequently, those findings are vacated.

### III. Appellate Attorney Fees and Costs

Each party requests an award of appellate attorney fees and costs. Pursuant to the Rules of Court, a party "may request an award of attorney fees incurred in the appeal" of "any case in which [the] party has a statutory, contractual or other basis to request attorney fees." Rule 5A:30(b)(2)(A). Neither party here alleges a contractual or specific statutory basis for an award of attorney fees or costs. *See id.*; *see also Barnes v. Barnes*, 64 Va. App. 22, 32 (2014) (observing that "[s]tatements unsupported by . . . authority[] or citation[] to the record do not merit appellate consideration" and the Court "will not search the record . . . [to] correct [such] deficiencies" (first alteration in original) (emphasis omitted) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992))). Absent such authority, we deny the parties' requests for attorney fees and costs.

### CONCLUSION

We hold that Church Mutual waived its right to consideration of its second, sixth, and seventh assignments of error due to noncompliance with Rule 5A:20(e). As to the remaining assignments of error, we hold, based on the language of the parties' insurance contract, that the circuit court correctly ruled it lacked jurisdiction to review the award under the statute pleaded. As a result, the ruling sustaining Ephesus's demurrer is affirmed. Due to this jurisdictional ruling, the Court vacates the factual findings that the circuit court lacked authority to make, and

we do not independently address the assignments of error challenging those findings.  Finally,

the parties' requests for attorney fees and costs are denied.

*Affirmed in part and vacated in part.*