## CIRCUIT COURT OF LOUDOUN COUNTY

Northern Virginia
Community Hospital, L.L.C., et al.

    v.

Loudoun County
Board of Supervisors et al.

Case No. (Chancery) 25225

By Judge Thomas D. Horne

October 18, 2006

    Complainants, Northern Virginia Community Hospital, L.L.C., and Women's Hospital Indianapolis, L.P., are the lessee and owner respectively of a tract of land located in the Broadlands area of Loudoun County, Virginia. Northern Virginia Community Hospital, L.L.C., is the holder of a valid Certificate of Public Need to construct a 164-bed hospital on the property. Zoning of the parcel is PD-OP ("Planned Development-Office Park"). Hospitals are an included use within the PD-OP District by Special Exception. A Special Exception application was filed with the appropriate County officials, in late 2002, to construct a hospital on that site. At the request of the County zoning staff, the complainant, although not required to do so, later filed a Zoning Concept Plan Amendment to clarify the permitted uses on the site and to permit the project to develop under a uniform plan of development.

On August 1, 2005, the Board of Supervisors (Board) voted to deny the Applications of Complainants. Not only the fact of denial but also the circumstances leading to the denial, including the motives of the Board, spawned the instant action.

The complainants suggest that the Board of Supervisors acted in concert with Loudoun Health Care, Inc., and its sole member, INOVA Health Systems Foundation, an affiliate of INOVA Health Systems, Inc., to preserve Loudoun Health Care, Inc.'s monopoly as an acute care hospital facility in Loudoun County. End products of this alleged restraint of trade were suggested zoning denials and amendments to the Comprehensive Plan. Loudoun Health Care, Inc., is the singular provider of such services at this time.

In Count I of the Amended and Consolidated Bill, Complainants request that the Court invalidate a Comprehensive Plan amendment providing for a countywide health care facilities plan. They seek invalidation predicated upon a failure by the Board to publish adequate notice to the public of the proposed amendment and upon the purported arbitrary and capricious provisions of the plan designed specifically to restrict competition and to protect Loudoun Health Care, Inc.

As noted, the instant motion for partial summary judgment is based upon a failure to provide adequate notice to the public in accordance with Va. Code Ann. §§ 15.2-2204, 15.2-2229. Following now familiar principles, a failure to give such notice renders the actions of the Board in amending the Comprehensive Plan void *ab initio*.

The published notice stated as follows:

CPAM 2004-0017
COUNTYWIDE HEALTH CARE FACILITIES PLAN

Pursuant to Sections 15.2-2225 and 229 of the Code of Virginia, the Board of Supervisors hereby gives notice of a Comprehensive Plan Amendment (CPAM) to amend the *Loudoun County General Plan* (revised July 23, 2001, and amended, March 4, 2002, January 14, 2003, April 20, 2004, and June 1, 2004) (*Revised General Plan*) to add Countywide Health Care Facilities policies. The CPAM would amend the *Revised General Plan* text by adding a general set of land use and design policies to provide guidance regarding the appropriate location and type of health care facilities throughout the County. The proposed policies would apply Countywide and would address topics such as: demographic, geographic, socioeconomic,

cultural, topographic, and transportation criteria, existing facilities and services, health care zones; encouraging and facilitating the location of health care-related businesses in proximity to medical centers; freestanding emergency care centers; private sector incentives; services such as adult day care, retirement housing, skilled nursing, and continuing care; infrastructure criteria; development of health care industry workforce; and development of health care facilities in a manner compatible with regional disaster planning efforts.

*Full and complete copies of the above referenced proposed Plan amendments may be examined in the Department of Planning, County Government Center, 1 Harrison Street, S.E., 3rd Floor, Leesburg, Virginia, from 9:00 a.m. to 4:30 p.m., Monday through Friday, or call 703-777-0246.*

Amendments to the Comprehensive Plan may only become effective when adopted in accordance with statutorily mandated procedural requirements. Va. Code Ann. § 15.2-2229. Adoption may follow only upon advertising "a descriptive summary of the proposed action and a reference to the places within the locality where copies of the proposed plans, ordinances, or amendments may be examined." Va. Code Ann. § 15.2-2204. The Supreme Court of Virginia has observed that:

"a descriptive summary" is a statement that covers the main points concisely, but without detailed explanation, in a manner that serves to describe an object for the knowledge and understanding of others ... the intent of the statute is to generate informed public participation by providing citizens with information about the content of the proposed amendments and the forum for debate concerning those amendments. There is no indication that the General Assembly expected affected citizens to engage in legal research in order to decide whether to participate in the hearing or to decide what their interests may be in a proposed amendment.

*Glazebrook v. Board of Supervisors*, 266 Va. 550, 554-555 (2003); *Gas Mart Corp. v. Board of Supervisors*, 269 Va. 334, 345 (2005).

Complainants suggest the original draft of the proposed amendments referenced underwent substantial modification by the Board. Thus, enactment of the amendments would require that notice be given anew. These changes

would specially restrict future hospital construction in an adverse way to the Complainants' pending zoning application and the terms of its Certificate of Need.

The Court finds that the notice adequately informed the public that the amendments would address, among other things, the location and type of health care facilities in the County. Simply stated, a resident of Loudoun County interested in where health care facilities might be located in the County would need to look no further than the advertisement to embolden their interest in the public debate on the issue. Just as a comprehensive plan is general in nature, refinements during the course of public debate become but a subset of the notice, so long as the action taken lies within the scope of the original proposal. In the instant case, an objective assessment of the refinements does not reveal any substantial departure from that which was noticed for debate.

While the Court declines to find enactment of the Comprehensive Plan amendments to be void *ab initio* by reason of the Board's failure to give the required statutory notice, this does not cancel the Complainant's test of the reasonableness of the Board's action. That challenge remains for a decision on another day. Accordingly, the Court declines to award summary judgment on the Complainant's claims that the CPAM was the result of arbitrary and capricious actions of the Board, and therefore, invalid. The later claims must await a hearing on the merits.

This case will be continued.

December 29, 2006

The instant motions involve discovery disputes between the Complainants and third parties to the litigation. Complainants have issued subpoenas *duces tecum* for documents and tangible things in the possession, custody, and control of the third parties. The requests have been met with motions to quash.

These subpoenas have been issued in relation to an action filed by the Complainants seeking declaratory and other relief arising out of alleged defalcations committed by the Loudoun County Board of Supervisors in connection with the zoning of property for use as a hospital. The nature of the controversy and the issues subject to judicial review are detailed in prior opinions of the Court and will not, for the sake of brevity, be restated here.

Among the claims presently before the Court is one based upon an intentional deprivation of complainants' right to the equal protection guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

As this Court has made clear in earlier opinions, the claim of intentional discrimination in a zoning context is not a reason for opening discovery to the exploration of the subjective motivations of a lawmaker. In evaluating the claim, the rule to be applied is whether or not the supervisors, based on the record before them, "reasonably could have believed that [their] action was rationally related to legitimate governmental interest." *Tri-County Paving v. Ashe County*, 281 F.3d 430, 439 (2002) (authority omitted). Thus, in contrast to one involving a fundamental right or suspect classification, the Court must uphold the action of the Board unless it can be shown upon objective review not to have been "rationally related to a legitimate state interest." *Id.*, at 438.

In addition to suggesting that compliance with the subpoenas is burdensome or seeks disclosure of matter not relevant to determination of the claim, the various third parties interpose First Amendment objections to production. This Court has previously addressed such discovery objections in *Braddock v. Loudoun County Board of Supervisors*, 20 Cir. C22001 (Va. Cir. 2003). In *Braddock*, the Court set out a detailed scheme to evaluate the merits of such objections. Essentially, like many such tests, a balancing of interests is employed. Need, relevancy, strength of case, and burdensomeness are issues to be evaluated and judged along with the "chilling effect" of the discovery on the right of citizens to correspond with their elected officials.

In the instant case, it has been represented that thousands of pages of material have been discovered from the County through the Freedom of Information Act. There is no evidence to suggest the public record produced by the County is incomplete. Discovery is not to be used as a "fishing expedition."

Prior to ordering compliance by any of the defendants, defendants should be able to explore by way of summary judgment the merits of the underlying claim. Accordingly, the Court will stay compliance with the subpoenas until further order of the Court and only after the Court has dealt with any pretrial dispositive motions as to the instant Equal Protection claim and such discovery is directed by Order of the Court.