PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Stephenson, S.J.

GAS MART CORPORATION, ET AL.

OPINION BY
v. Record No. 041455   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                      March 3, 2005
BOARD OF SUPERVISORS OF
 LOUDOUN COUNTY, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

In this interlocutory appeal, numerous complainants
challenge the validity of revisions to a county's zoning
ordinance.

I

On January 6, 2003, the Board of Supervisors of Loudoun
County (the Board) enacted comprehensive amendments to the
Loudoun County Zoning Ordinance and Zoning Map (the ZOAs).
Within thirty days thereafter, more than 200 suits in equity
were filed against the Board and the County of Loudoun
(collectively, the County), challenging the validity of the ZOAs
on various grounds. By a decree, the trial court consolidated
all of the suits pursuant to the Multiple Claimant Litigation
Act, Code §§ 8.01-267.1 through -267.9, and directed the
formation of a Litigation Steering Committee (the LSC) to
represent all complainants in the consolidated cases with
respect to common issues of law and fact.

With leave of court, the LSC filed on behalf of all complainants an amended supplemental bill of complaint for declaratory judgment and other relief with respect to the common issues.  Two counts of that bill of complaint, Counts IV and IX, are at issue in this appeal.

In Count IV, the complainants alleged that the ZOAs were void ab initio because the Board had failed to comply with the public notice requirements of Code § 15.2-1427(F).  In sustaining the County's demurrer to Count IV, the trial court concluded that Code § 15.2-1427(F) is inapplicable to the enactment or amendment of zoning ordinances.

In Count IX, the complainants asserted that the Board had failed in a number of ways to satisfy the public hearing notice requirement of Code § 15.2-2204(A).  With one exception, the trial court rejected the complainants' assertion, holding that the notice satisfied the requirements of Code § 15.2-2204(A).

After the trial court issued its letter opinion, the complainants requested the court to certify two "controlling questions of law" as appropriate for an interlocutory appeal, pursuant to the provisions of Code § 8.01-267.8(B).  By decree entered June 14, 2004, the trial court certified the two questions presented in this appeal, stating that there are "controlling questions of law as to which there is substantial ground for difference of opinion, and . . . an immediate appeal

. . . may materially advance the ultimate termination of this litigation."  We awarded the complainants an interlocutory appeal on the two questions of law certified by the trial court, concluding that they were appropriate for an interlocutory appeal pursuant to the Multiple Claimant Litigation Act.

These are the two questions presented in this appeal:

1.  Whether the trial court erred in holding that the Board was not required to comply with the procedures set forth in Code § 15.2-1427(F), as a condition precedent to the valid enactment or amendment of a zoning ordinance under Code § 15.2-2285(C); and

2.  Whether the trial court erred in holding that, with the lone exception noted above, the notices published by the Board satisfied the requirements of Code § 15.2-2204(A).

II

On January 6, 2003, the Board adopted the ZOAs.  The process began on January 5, 2000, when the Board passed a resolution directing the County Planning Commission to initiate a review and revision of the County's comprehensive land use plan.

On July 23, 2001, the Board adopted extensive modifications of the County comprehensive land use plan, which became known as "the Revised General Plan."  Thereafter, the Board, the Planning Commission, the County staff, and outside experts prepared

revisions to the Zoning Ordinance to implement the policies of the Revised General Plan.

On July 15, 2002, the Board passed another resolution stating that it had "placed as its highest priority, in implementing the Revised General Plan, the comprehensive remapping and necessary amendments to the Zoning Ordinance." This resolution directed the Planning Commission "to conduct a review of the proposed remapping and the amended Zoning Ordinance text language" and present its findings and recommendations to the Board by October 15, 2002.

The Planning Commission held public hearings on the proposed amendments on August 14 and 17, 2002, after publishing the required legal advertisement and mailing a notice letter to each of approximately 64,000 County landowners regarding the hearings. A revised draft of the proposed amendments, together with the Planning Commission's recommendations, was forwarded to the Board on October 16, 2002.

After receiving the Planning Commission's recommendations, the Board published an advertisement in the Loudoun Times-Mirror on October 16 and 23, 2002, announcing that it would conduct public hearings on November 2 and 6, 2002, to consider the proposed amendments. The advertisement read as follows:

**PUBLIC HEARING**

4

The LOUDOUN COUNTY BOARD OF SUPERVISORS will hold a public hearing in the Board of Supervisors' Meeting Room, County Government Ctr., 1 Harrison Street, S.E., Leesburg, Virginia on Saturday, November 2, 2002, at 9:00 a.m. and Wednesday, November 6, 2002, at 3:00 p.m. and 6:00 p.m. to consider the following:

ZOAM 2002-0003
PROPOSED AMENDMENTS TO ALL ARTICLES OF THE 1993 ZONING ORDINANCE FOR THE PURPOSE OF IMPLEMENTING THE POLICIES OF THE REVISED GENERAL PLAN

Pursuant to Sections 15.2-2204 and 15.2-2285 of the Code of Virginia and a Resolution regarding Review of the Comprehensive Plan and Zoning Ordinance adopted by the Board of Supervisors on January 5, 2000, the Loudoun County Board of Supervisors hereby gives notice that it will consider comprehensive amendments to the 1993 Loudoun County Zoning Ordinance (the "Ordinance"). Such amendments would revise the entire Ordinance in conjunction with a comprehensive amendment to the Zoning Map. Such amendments would add, replace, modify, delete and add to various Articles and Sections of the Ordinance as necessary to implement policies of the Revised General Plan adopted by the Board of Supervisors on July 23, 2001. Provisions that are proposed to be added or amended include, without limitation, the following:

- New and revised requirements for the proposed new AR-1 and AR-2 Agricultural Rural zoning districts; the proposed new TR-1 (including sub-districts TR1UBF, TR1LF), TR-2, TR-3 (including sub-districts TR3UBF, TR3LBR, TR3LF) and TR-10 Transitional Residential zoning districts; the proposed new JLMA-1, JLMA-2, JLMA-3 and JLMA-20 Joint Land Management Area zoning districts; the proposed new TREC Transit Related Employment Center zoning district; the proposed new Village Overlay District; the CLI Commercial Light Industry zoning district and the RC Rural Commercial zoning district;

- Provisions to implement the Conservation Design policies in the Revised General Plan;

5

- Provisions to implement the Green Infrastructure policies in the <u>Revised General Plan</u> by various means including, without limitation, imposition of environmental overlay districts such as a River and Stream Corridor Overlay District and a Limestone Overlay District and amending the Mountainside Development Overlay District; and

- Provisions to encourage and support rural economic development.

  The public purposes for these amendments include those purposes of zoning set forth in Section 15.2[-]2200 and 15.2[-]2283 of the Code of Virginia.

ZMAP 2002-0014
PROPOSED AMENDMENTS TO THE COUNTYWIDE
ZONING MAP FOR THE PURPOSE OF
IMPLEMENTING THE POLICIES OF
THE REVISED GENERAL PLAN

Pursuant to Sections 15.2-2204 and 15.2-2285 of the Code of Virginia and a Resolution regarding Review of the Comprehensive Plan and Zoning Ordinance adopted by the Board of Supervisors on January 5, 2000, the Loudoun County Board of Supervisors hereby gives notice that it will consider comprehensive amendments to the Countywide Zoning Map. Such amendments would change the zoning district designations, including zoning overlay districts, on the County Zoning Map for the purpose of implementing the <u>Revised General Plan</u> (the "Plan") adopted by the Board of Supervisors on July 23, 2001. Major revisions would include, without limitation, the following revisions to conform to recommended densities and policies of the Plan:

- Remapping most of the existing Agricultural Residential (A-3), Agriculture (A-10) and Countryside Residential (CR-1 through CR-4) properties in the western portion of the County to Agricultural Rural AR-1, at a density of 1 dwelling unit ("d.u.") per 20 acres (or, if clustered, 1 d.u. per 10 acres), and AR-2 at a density of 1 d.u. per 50 acres (or, if clustered, 1 d.u. per 20 acres);

6

- Remapping the A-3, CR-1 and CR-2 districts within the Joint Land Management Areas (JLMA) to new JLMA districts with densities generally unchanged except for proposed reduction in density to 1 d.u. per 20 acres for properties lying generally in the vicinity of the Leesburg Airport;

- Remapping the residential CR areas in the vicinity of Arcola to PD-GI General Industrial with Floor Area Ratio ("FAR") up to a maximum of 0.4;

- Remapping the Planned Development-Industrial Park (PD-IP), A-3 and CR areas west of Dulles Airport to PD-GI General Industrial with FAR up to a maximum of 0.4;

- Remapping the Broad Run Farms area and substantial areas lying generally south of the Dulles Greenway and east of Goose Creek where recommended by the Plan for residential use from A-3 and CR to R-1 at a density of 1 d.u. per acre;

- Expansion of the existing Commercial Light Industry CLI district and remapping of certain CR property to CLI for properties lying generally on the south side of Route 50 east of Lenah Run at densities generally up to 0.35 FAR;

- Remapping much of the A-3 property lying generally south of Sycolin Creek and west of Goose Creek and east of Evergreen Mills Road (Route 621) to Transitional Residential TR-10 at a density of 1 d.u. per 10 acres with required clustering;

- Remapping much of the A-3 property lying generally east of Route 15 and south of Braddock Road (Route 705) to Transitional Residential TR-3 (sub-district TR3UBF) at a density of 1 d.u. per 3 acres with required clustering;

- Remapping much of the A-3 property lying generally north of Route 50 and east of Watson Road (Route 860) and south of Evergreen Mills Road (Route 621) to Transitional Residential TR-3

7

(sub-district TR3UBF) at a density of 1 d.u. per 3 acres with required clustering;

- Remapping much of the A-3 property lying generally south of Braddock Road (Route 620) and west of Fairfax County to Transitional Residential TR-3 (sub-district TR3LF) at a density of 1 d.u. per 3 acres with required clustering;

- Remapping much of the A-3 property lying generally south of Braddock Road (Route 620) to the east of Prince William County and west of Fairfax County to Transitional Residential TR-3 (sub-district TR3LBR) at a density of 1 d.u. per 3 acres with required clustering;

- Remapping CR properties in the vicinity of Lenah lying generally on the north and south sides of Route 50 and north and south of Braddock Road (Route 705 & Route 620) and east of Route 15 to Transitional Residential TR-1 (sub-district TR1UBF) at a density of 1 d.u. per acre with required clustering;

- Remapping the strip of CR properties generally on the south sides of Braddock Road (Route 620) and west of Fairfax County to Transitional Residential TR-1 (sub-district TR1LF) at a density of 1 d.u. per acre with required clustering;

- Imposing a new Village Overlay district upon the existing villages in the rural areas and upon the village of Ashburn to achieve continuity and consistency of future development in the villages with existing development.

The public purposes for these amendments include those purposes of zoning set forth in Section 15.2[-]2200 and 15.2-2283 of the Code of Virginia

*Unless otherwise noted in the above notices, full and complete copies of the above-referenced applications and related documents may be examined in the Loudoun County Building and Development Department, 1 Harrison Street, S.E., 2nd Floor, Leesburg, Virginia, from 9:00*

*a.m. to 4:30 p.m., Monday through Friday or call (703) 777-0397.*

All members of the public will be heard as to their views pertinent to these matters.  Citizens are urged to call to sign up to make a presentation at the public hearing.  Individual citizen comments and organizations will be limited to three minutes so that all in attendance may have the opportunity to speak. Written comments are encouraged and may be submitted to the Deputy Clerk to the Board of Supervisors. Please call the Board of Supervisors' Office at (703) 777-0204 to register to speak.  Registrations will begin Tuesday, October 22, 2002.  Speakers who anticipate providing a written copy of their comments are kindly requested to provide 15 copies to the Deputy Clerk.

Hearing assistance is available for meetings in the Board Room.  If you require any type of reasonable accommodation as a result of a physical, sensory or mental disability to participate in this meeting, please contact County Administration at (703) 777-0200.  Three days notice is requested.  FM Assistive Listening System is available at the meetings.

BY ORDER OF:                      SCOTT K. YORK, CHAIRMAN
                      LOUDOUN COUNTY BOARD OF SUPERVISORS

In addition to the newspaper advertisement, the Board mailed a notice letter to each of approximately 64,000 County landowners before the public hearings.  The letters informed the landowners of the dates and times of the Board's public hearings.  The  letters also informed each landowner of the specific district proposed for that landowner's property and explained that the district included regulations governing the use and development of the property.  In addition, the letters advised the location where copies of the proposed amendments were available for review.

9

Thereafter, the Board held public hearings on November 2 and 6, 2002, at which the Board received numerous comments from the public. Following the public hearings, the Board continued to refine the amendments before their adoption on January 6, 2003.

## III

The complainants contend that the public hearing notices did not satisfy the requirements of Code § 15.2-2204(A), which, in pertinent part, provides the following:

> Plans or ordinances, or amendments thereof, recommended or adopted under the powers conferred by this chapter need not be advertised in full, but may be advertised by reference. Every such advertisement shall contain a <u>descriptive summary</u> of the proposed action and a reference to the place or places within the locality where copies of the proposed plans, ordinances or amendments may be examined.

> The local planning commission shall not recommend nor the governing body adopt any plan, ordinance or amendment thereof until notice of intention to do so has been published once a week for two successive weeks in some newspaper published or having general circulation in the locality.

(Emphasis added.) In sum, this statute provides that public hearing notices must contain three specific elements: (1) a descriptive summary of the proposed amendments; (2) a reference to the place within the locality where the proposed amendments may be examined; and (3) notice of the governing body's intention to adopt the proposed amendments. According to the

10

complainants, the public hearing notices published by the Board
"satisfied none of these three requirements."

A

First, we consider whether the public hearing notices
provided a legally adequate "descriptive summary" of the Board's
proposed zoning action. [1]  In the recent case of Glazebrook v.
Board of Supervisors, 266 Va. 550, 554-55, 587 S.E.2d 589, 591-
92 (2003), we stated, in pertinent part, the following:

> a "descriptive summary" is a statement that covers the
> main points concisely, but without detailed
> explanation, in a manner that serves to describe an
> object for the knowledge and understanding of others.
>
> . . . If the notice does not cover the main
> points of the proposed amendment and does not
> accurately describe the proposed amendment, it does
> not satisfy Code § 15.2-2204(A).  However, the notice
> need not contain the full text of the proposed
> amendment, nor explain the proposed amendment in
> detail.
>
> . . . [The language of Code § 15.2-2204(A)]
> suggests that the intent of the statute is to generate
> informed public participation by providing citizens
> with information about the content of the proposed
> amendments and the forum for debate concerning those
> amendments.  There is no indication that the General
> Assembly expected affected citizens to engage in legal
> research in order to decide whether to participate in
> the hearing or to decide what their interests may be
> in a proposed amendment.

---

[1] The trial court held that the Board had failed to provide
any "descriptive summary" of the environmental overlay district
amendments.  Therefore, the trial court declared the ZOAs
relating to those districts void ab initio.  The court severed
those amendments from the remainder of the ZOAs, and they are
not part of this appeal.

11

In Glazebrook, the challenged public hearing notices stated only that the "development standards" for certain specified zoning districts in a county would be amended. 266 Va. at 556, 587 S.E.2d at 592. We explained that the term "development standards," as used in the county's ordinance, was "a heading within which are a number of subheadings describing specific regulations." Id.

We held, in Glazebrook, that

the notice published by the Board did not contain a sufficiently descriptive summary of the proposed amendments to the . . . County zoning ordinances. No citizen could reasonably determine, from the notice, whether he or she was affected by the proposed amendments except in the most general sense of being located in a particular type of zoning district. Nor could a citizen determine whether the proposed amendments affected zoning issues that were of interest or concern to the citizen. Given the number of issues subsumed under the heading "development standards," using that heading as a descriptive summary fails to inform citizens of the universe of possible zoning ordinance amendments in any meaningful way.

Id., 587 S.E.2d at 592-93.

(1)

In the present case, the public hearing notices listed a number of "[p]rovisions that [were] proposed to be added or amended." One of the proposals was titled "Provisions to implement the Conservation Design policies in the Revised General Plan." This is the only reference to "Conservation Design policies" stated in the notices. The complainants

12

contend that this statement, standing alone, does not constitute a "descriptive summary" as required by Code § 15.2-2204(A), and we agree.

The name of the policies (i.e., "Conservation Design") provides the only clue regarding the Board's proposed action. There is no description or summary of the content of those policies, and the notices do not indicate the particular areas of the County that would be affected by the proposed policies.[2] Clearly, the lone statement fails to cover the main points in a manner that informs the public regarding the content of the policies and the affected areas of the County. We hold, therefore, that the statement in the notices fails to satisfy the "descriptive summary" requirement of Code § 15.2-2204(A), as defined and explicated in Glazebrook, and that the trial court erred in holding that the notices were satisfactory in this regard.

(2)

The complainants also contend that the public hearing notices contained an inadequate description of the areas of the County proposed to be rezoned to the AR-1 and AR-2 districts.

---

[2] According to complainants, the Conservation Design regulations impose significant restrictions on landowners' ability to develop their properties in the following districts: AR-1, AR-2, JLMA, and Transitional Residential. These districts encompass approximately two-thirds of the area of the County.

13

The notices state that "most of" the existing A-3, A-10, and CR properties "in the western portion of the County" would be redesignated to either AR-1 or AR-2 zoning districts.

In setting forth a description of the areas proposed to be rezoned, the Board failed to state any specific geographic boundaries or landmarks that would have allowed the public to ascertain the areas that would be affected by these amendments. Thus, landowners were compelled to try to determine what the Board meant by "most of . . . the western portion of the County." In addition, the description also proved to be inaccurate and misleading, as shown by the new zoning map that became effective when the Board adopted the ZOAs. The new zoning map shows that the areas now zoned AR-1 and AR-2, described as located in the western portion of the County, actually extended as far east as the northeastern border of the County along the Potomac River.

We said, in Glazebrook, that a citizen must be able "reasonably [to] determine, from the notice, whether he or she was affected by the proposed amendments." 266 Va. at 556, 587 S.E.2d at 592. A citizen could not reasonably make that determination from the description at issue in the present case. We hold, therefore, that, for this reason, the public hearing

The County contends that the regulations "do not in themselves impose any zoning restrictions affecting the use of the land."

14

notices, as to the areas of the County affected by the rezoning to the AR-1 and AR-2 districts, failed to satisfy the requirements of Code § 15.2-2204(A).  Thus, the trial court erred in holding that the notices were satisfactory in this regard.

B

(1)

We next consider the complainants' contention that the public hearing notices were defective because the notices stated that the Board would hold public hearings to "consider" the proposed zoning amendments.  The complainants assert that Code § 15.2-2204(A) required the Board to publish notice of its intention to "adopt," not merely to "consider," the proposed amendments.

In rejecting this contention, the trial court concluded that

> the use of the word "consider", when read with the remaining provisions of the publication, denotes the same deliberative process as acting upon the proposed amendments.  No particular words are required to satisfy the statute.  It may be reasonably inferred that the Board intended to take some action as to the proposed amendments and that action would be favorable to the adoption of the amendments.

We agree with the trial court and reject the complainants' contention.

(2)

15

We now consider the complainants' contention regarding notice of the availability for review of the proposed zoning amendments. Code § 15.2-2204(A) provides, inter alia, that the advertisement "shall contain . . . a reference to the place or places within the locality where copies of the proposed plans, ordinances or amendments may be examined." (Emphasis added.) The advertisement in the present case stated that "*full and complete copies of the . . . applications and related documents may be examined in the Loudoun County Building and Development Department, 1 Harrison Street, S.E., 2nd Floor, Leesburg, Virginia.*" (Emphasis added.) The complainants contend that, because the Board failed to use the statutory language and used the term "applications and related documents," the advertisement failed to satisfy the requirements of Code § 15.2-2204(A). We do not agree. Again, we agree with the trial court's conclusion:

> While the notice should have referenced the ". . . place or places within the locality where copies of the proposed plans, ordinances or amendments may be examined", the failure to so state is not fatal to the amendments. A fair reading of the notice would indicate that the full text of the amendments and map was available at the Building and Development Office.

IV

Finally, we consider whether the Board was required to publish, in addition to the notice prescribed by Code §§ 15.2-2204(A) and -2285(C), the notice mandated by Code § 15.2-

16

1427(F).  The complainants contend that the Board was required to publish such notice.  The County, on the other hand, contends that zoning ordinances are governed solely by Code §§ 15.2-2204(A) and -2285(C), which apply specifically to zoning.

Code § 15.2-2285 is the enabling statute for zoning ordinances.  Subsection C thereof reads, in pertinent part, as follows:

> Before approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.2-2204, after which the governing body may make appropriate changes or corrections in the ordinance or proposed amendment. . . .  However, no land may be zoned to a more intensive use classification than was contained in the public notice without an additional public hearing after notice required by § 15.2-2204.  <u>Zoning ordinances shall be enacted in the same manner as all other ordinances</u>.

(Emphasis added.)

Code § 15.2-1427(F) prescribes the general procedures for advertising the proposed adoption, amendment, or repeal of an ordinance.  It reads, in pertinent part, as follows:

> In counties, <u>except as otherwise authorized by law</u>, no ordinance shall be passed until after descriptive notice of an intention to propose the ordinance for passage has been published once a week for two successive weeks prior to its passage in a newspaper having a general circulation in the county. . . .  The publication shall include a statement either that the publication contains the full text of the ordinance or that a copy of the full text of the ordinance is on file in the clerk's office of the circuit court of the county or in the office of the county administrator.

(Emphasis added.)

The complainants rely on the statement in Code § 15.2-2285 mandating that "[z]oning ordinances shall be enacted in the same manner as all other ordinances." They claim that the adoption of a zoning ordinance requires a two-step notice procedure; i.e., notice of public hearings under Code §§ 15.2-2204 and -2285 and notice of adoption under Code § 15.2-1427(F).

The County relies upon the language in Code § 15.2-1427(F) which states that it shall apply "except as otherwise authorized by law." Zoning matters, the County asserts, are otherwise authorized by Code §§ 15.2-2204 and -2285.

It is firmly established that, "when one statute speaks to a subject generally and another deals with an element of that subject specifically, the statutes will be harmonized, if possible, and if they conflict, the more specific statute prevails." Commonwealth v. Brown, 259 Va. 697, 706, 529 S.E.2d 96, 101 (2000). This is so because "a specific statute cannot be controlled or nullified by a statute of general application unless the legislature clearly intended such a result." Id.

Code §§ 15.2-2204 and -2285 address the notice and hearing requirements as they relate specifically and in detail to zoning ordinances. Code § 15.2-1427(F), on the other hand, applies generally to county ordinances "except as otherwise authorized by law." We conclude, therefore, that Code § 15.2-1427(F), a

18

statute of general application, does not apply to the adoption of zoning ordinances. Accordingly, in the present case, we hold that the Board was not required to comply with Code § 15.2-1427(F) and that the trial court was correct in so ruling.

                                    V

In sum, we will reverse the trial court's rulings with respect to the sufficiency of the descriptive summaries in the public hearing notices as they related to the "Conservation Design policies" and to the areas of the County affected by the rezoning to AR-1 and AR-2 districts. In all other respects, we will affirm the trial court. We will remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.