Present:  Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.

ANTON E.B. SCHEFER

                                                  OPINION BY
v.  Record No. 090803          JUSTICE LAWRENCE L. KOONTZ, JR.
                                               April 15, 2010
CITY COUNCIL OF THE CITY OF
FALLS CHURCH

                 FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                      William T. Newman, Jr., Judge

     In this appeal, we consider whether a zoning ordinance,

which establishes different building height regulations on

one-family dwellings in the same zoning district, violates the

provisions of Code § 15.2-2282.  We also consider an equal

protection challenge to that zoning ordinance.

                              BACKGROUND

     The material facts are not in dispute.  Anton E.B.

Schefer[2] owns 12 lots in the City of Falls Church (the "City"),

all of which are zoned R1-B, a medium-density residential

district.  Falls Church City Code § 38-17 (2006).[3]  Under the

_____

        [1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
10, 2010.
        [2] Schefer died on February 18, 2010 during the pendency of
this appeal.  Counsel for Schefer filed a motion for this
Court to retain jurisdiction pursuant to Code § 8.01-20.  In
its reply, the City did not oppose the motion.  We granted the
motion by order dated March 15, 2010.
        [3] All references to the Falls Church City Code contained
in this opinion relate to the 2006 version since the parties
and the circuit court relied exclusively on this version
below.  Since 2006, the City's code has been renumbered and

City's zoning ordinance, the minimum lot area requirement for one-family dwellings in the R1-B zoning district is 7,500 square feet. Falls Church City Code § 38-17(e)(1). Lots, such as those owned by Schefer, that are comprised of a lot area of less than 7,500 square feet, but were lawfully created prior to this requirement, are designated as "Substandard lots" under the City's zoning ordinance. Falls Church City Code § 38-28(b)(2).

In 2006, the City adopted Zoning Ordinance 1799, amending the permissible height and yard set-back regulations for a one-family dwelling on substandard lots throughout the City's residential districts. Falls Church City Code § 38-28(b)(2) (as amended Dec. 11, 2006). Prior to the enactment of this ordinance, the maximum building height for "residential use" on all lots in the R1-B zoning district was "the lesser of thirty-five (35) feet or two and one-half (2½) stories." Falls Church City Code § 38-17(e)(4). With the enactment of Ordinance 1799, the City created a formula for calculating the allowable building height of one-family dwellings on substandard lots within the City's "R" (residential) zoning districts. Falls Church City Code § 38-28(b)(2). That formula provides that "substandard lot building height shall

portions have been amended. The amendments are not pertinent to the issues presented in this appeal.

2

be determined as a ratio of actual lot area to the required lot area, multiplied by the maximum allowable height in the underlying zoning district.  However, the substandard lot building height shall not be required to be less than twenty five (25) feet." Id.  Thus, the maximum height of one-family dwellings on substandard lots in the R1-B zoning district will range between 25 to 35 feet, depending on the size of each lot.  The maximum height of one-family dwellings on "standard" lots in the R1-B zoning district remains 35 feet.

Schefer hired a licensed surveyor to evaluate the potential impact of Ordinance 1799 on one of his substandard lots.  The surveyor first determined that the lot's actual area of 6,007 square feet when compared to the required lot area of 7,500 square feet presented a ratio of 0.8010.  Multiplying 0.8010 by the maximum allowable height of 35 feet, the surveyor concluded that 28.04 feet was the maximum building height allowed for this lot.

Thereafter, Schefer filed a declaratory judgment action against the City,[4] claiming that Ordinance 1799 violates the provisions of Code § 15.2-2282 and deprives him of equal protection under the law.  The parties subsequently filed a joint statement of facts and cross-motions for summary

_____

[4] Specifically, the "City Council of the City of Falls Church, Virginia" was named as the defendant.

3

judgment.  After conducting a hearing on the motions, the circuit court granted the City's motion for summary judgment, denied Schefer's motion for partial summary judgment, and dismissed Schefer's case with prejudice.

We awarded Schefer this appeal, which presents only questions of law to review de novo.  Board of Zoning Appeals v. Board of Supervisors, 276 Va. 550, 552, 666 S.E.2d 315, 316 (2008).

DISCUSSION

Schefer asserts that Ordinance 1799 should be declared void because it is in plain violation of Code § 15.2-2282. The thrust of his assertion is that the express language of Code § 15.2-2282 prevents the City from imposing different building height regulations on one-family dwellings in the R1-B zoning district based solely on lot size.  Thus, the focus of our analysis of this issue is whether Ordinance 1799 violates the requirement of Code § 15.2-2282 that "[a]ll zoning regulations shall be uniform for each class or kind of buildings and uses throughout each district."  In this regard, Schefer maintains that "uniform" means "identical."

Schefer also asserts an equal protection challenge to Ordinance 1799.  Schefer contends that Ordinance 1799 is facially discriminatory and, thus, unconstitutional on its face.  Additionally, Schefer maintains that the City failed to

4

establish that Ordinance 1799 is "substantially related to the public health, safety, or welfare."  See Board of Supervisors v. Rowe, 216 Va. 128, 140, 216 S.E.2d 199, 210 (1975).

We begin our review of Schefer's challenges to Ordinance 1799 with the well-established Dillon Rule of strict construction.  The Dillon Rule "provides that 'municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable.' "  Marble Techs., Inc. v. City of Hampton, 279 Va. 409, 417, 690 S.E.2d 84, 88 (2010) (quoting Board of Zoning Appeals, 276 Va. at 553-54, 666 S.E.2d at 317); accord Board of Supervisors v. Countryside Investment Co., 258 Va. 497, 502-05, 522 S.E.2d 610, 612-14 (1999); City of Chesapeake v. Gardner Enters., 253 Va. 243, 246, 482 S.E.2d 812, 814 (1997).  Thus, "[w]hen a local ordinance exceeds the scope of this authority, the ordinance is invalid." City of Chesapeake, 253 Va. at 246, 482 S.E.2d at 814; see also Board of Supervisors v. Reed's Landing Corp., 250 Va. 397, 400, 463 S.E.2d 668, 670 (1995) ("If there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body.").  There is no dispute that pursuant to Code § 15.2-2280 the General Assembly has authorized any locality by ordinance to zone the territory in

its jurisdiction. Code § 15.2-2282 addresses the scope of this general authority.

Code § 15.2-2282 provides that "[a]ll zoning regulations shall be uniform for each class or kind of buildings and uses throughout each district, but the regulations in one district may differ from those in other districts." This requirement, commonly referred to as the "uniformity requirement," was modeled after § 2 of the Standard State Zoning Enabling Act ("SSZEA"), published by the United States Department of Commerce in 1926, which states in part that all zoning "regulations shall be uniform for each class or <u>kind of buildings</u> throughout each district, but the regulations in one district may differ from those in other districts." SSZEA §2 at 6 (emphasis added). This or a similar requirement appears in the zoning enabling acts of nearly every state. 1 Patricia E. Salkin, American Law of Zoning § 6:25 (5th ed. 2009). Virginia clearly adopted the SSZEA language verbatim, with the exception of adding "uses" to its requirement.

The crux of the uniformity requirement is to assure that zoning regulations are nondiscriminatory. <u>See</u>, <u>e.g.</u>, <u>Anderson House, LLC v. Mayor & City Council of Rockville</u>, 939 A.2d 116, 131 (Md. 2008) ("Many jurisdictions agree that the kind of discrimination violative of the uniformity requirement occurs when a zoning ordinance singles out a property or properties

6

for different treatment than others similarly situated."); see also Harris v. Zoning Comm'n, 788 A.2d 1239, 1258 (Conn. 2002) ("The thrust of the statutory requirement of uniformity is equal treatment."); Rumson Estates, Inc. v. Mayor & Council of the Borough of Fair Haven, 828 A.2d 317, 329-30 (N.J. 2003) ("Uniformity is not absolute and rational regulations based on different conditions within a zone are permissible so long as similarly situated property is treated the same."). As the drafters of the SSZEA noted, "[The uniformity requirement] is important, not so much for legal reasons as because it gives notice to property owners that there shall be no improper discriminations, but that all in the same class shall be treated alike." SSZEA §2, at 6 n.19; see also 1 Salkin, supra, at § 6:25.

Likewise, we declared in Bell v. City Council of Charlottesville, 224 Va. 490, 496-97, 297 S.E.2d 810, 814 (1982) that the uniformity requirement "is in reality a statutory reaffirmation of the equal protection of the law guaranteed to all persons by the Fourteenth Amendment to the Constitution." Generally, under an equal protection analysis, "[w]hen a land use permitted to one landowner is restricted to another similarly situated, the restriction is discriminatory, and, if not substantially related to the public health,

7

safety, or welfare, constitutes a denial of equal protection of the laws." Rowe, 216 Va. at 140, 216 S.E.2d at 210.

With these principles in mind, we resolve the issue whether Ordinance 1799 violates Code § 15.2-2282 by examining the plain language of the statute. See Logan v. City Council, 275 Va. 483, 492, 659 S.E.2d 296, 301 (2008) ("We determine the General Assembly's intent from the words employed in the statutes."); City of Richmond v. Confrere Club of Richmond, 239 Va. 77, 80, 387 S.E.2d 471, 473 (1990) ("Legislative intent is determined from the plain meaning of the words used."). Code § 15.2-2282 requires uniform zoning regulations "for each class or kind of buildings and uses throughout each district." (emphasis added). By its plain terms, the uniformity requirement applies only to those "buildings and uses" of the same "class or kind."

Schefer maintains that one-family dwellings are "buildings and uses" of the same "class or kind" and, therefore, the City must impose identical building height regulations on standard and substandard lots in the R1-B zoning district. We conclude, however, that this case is equally about two "kind[s]" of "uses" as contemplated by Code § 15.2-2282, that is residential use on standard lots and residential use on substandard lots. There is no dispute that the City uniformly applies its building height regulations for

8

one-family dwellings on standard lots and uniformly applies its building height regulations for one-family dwellings on substandard lots in the R1-B zoning district.  In sum, under Ordinance 1799 the building height regulations for one-family dwellings on all substandard lots are applied identically, and those regulations for one-family dwellings on standard lots are applied identically.  We thus hold that Ordinance 1799 does not violate the uniformity requirement of Code § 15.2-2282.

We now turn to Schefer's equal protection challenge.  We review this challenge in accordance with the following well-settled principles:

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary.  The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The [C]ourt will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.

Board of Supervisors v. Carper, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959) (emphasis added).  Moreover, "[w]hen presumptive reasonableness 'is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness.' "  Board of Supervisors v.

9

McDonald's Corp., 261 Va. 583, 590, 544 S.E.2d 334, 339 (2001) (quoting Board of Supervisors v. Jackson, 221 Va. 328, 333, 269 S.E.2d 381, 385 (1980)) (emphasis added); see also Kisley v. City of Falls Church, 212 Va. 693, 697, 187 S.E.2d 168, 171 (1972) ("the presumption governs unless it is overcome by unreasonableness apparent on the face of the ordinance").

Schefer contends that the City has failed to meet its burden by failing to offer evidence of the reasonableness of Ordinance 1799. Yet, as the party challenging a presumptively reasonable zoning ordinance, Schefer has the initial burden of offering evidence of its unreasonableness. Schefer, however, has consistently maintained that Ordinance 1799 is facially discriminatory and that its "reasonableness or lack thereof is irrelevant." Because Ordinance 1799 is not inherently suspect and does not infringe upon the exercise of a fundamental right, we reject Schefer's assertion that it is facially discriminatory. See Estes Funeral Home v. Adkins, 266 Va. 297, 304, 586 S.E.2d 162, 165 (2003); Cupp v. Board of Supervisors, 227 Va. 580, 596, 318 S.E.2d 407, 415 (1984). Accordingly, we conclude that Schefer did not present sufficient evidence to show that Ordinance 1799 is unreasonable and, thus, failed to rebut the presumption of its validity.

CONCLUSION

For these reasons, we will affirm the circuit court's judgment awarding summary judgment in favor of the City.

Affirmed.