COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Athey, Causey and Callins
Argued at Winchester, Virginia


RICHARD REBH, ET AL.

OPINION BY
v.          Record No. 0240-23-4          JUDGE DOMINIQUE A. CALLINS
MAY 7, 2024

THE COUNTY BOARD OF ARLINGTON
 COUNTY, VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

Craig J. Blakeley (Alliance Law Group LLC, on briefs), for
appellants.

Ann Mayhew Golski, Assistant County Attorney (Arlington County
Attorney's Office, on brief), for appellee.


Following Amazon's 2018 decision to establish an east coast headquarters in Arlington

County, the County Board of Arlington County (the "Board") adopted the Pentagon City Sector

Plan ("Sector Plan") and its associated amendments that increased the height and density limits

for buildings located within certain zoning districts in Pentagon City. The plaintiffs

(collectively, "Rebh" or "Residents") are eleven residents of two condominium buildings located

just outside one of the zoning districts affected by the Board's actions. Rebh filed a four-count

complaint for declaratory judgment and injunctive relief against the Board, alleging that the

Board's actions are void ab initio because (1) the Board adopted the Sector Plan and its

associated amendments without the necessary resolution and certification from the Arlington

County Planning Commission (the "Commission"), in violation of Code §§ 15.2-2225

and -2226; (2) the Board provided insufficient public notice of its proposed actions, in violation

of Code § 15.2-2204(A); (3) the amendments violated the uniformity requirement under Code

§ 15.2-2282; and (4) the Board acted arbitrarily and capriciously. The Board demurred, and the trial court sustained the demurrer on all four counts. On appeal, Rebh challenges the trial court's ruling as to the first three counts. We hold that the Board satisfied the resolution and certification requirement and the uniformity requirement, but the Board did not provide sufficient public notice of its proposed actions.[1] We therefore reverse the trial court's judgment and declare the Board's actions void ab initio.

BACKGROUND

Since 1976, the Pentagon City Phased Development Site Plan ("PDSP") has guided growth and development in the Pentagon City area in Arlington County. RiverHouse is an Arlington County apartment complex located primarily in an RA6-15 Multiple-Family Dwelling zoning district and consisting of three buildings: the James, the Potomac, and the Ashley. The PDSP boundaries enclose a C-O-2.5 Mixed-Use zoning district in Pentagon City, and the RiverHouse property has not historically been considered by Arlington County (the "County") as part of the PDSP. The Residents live in two condominium buildings—the Representative and the Ridge House—that overlook RiverHouse from the west and have iconic views of Washington, DC that are currently unimpeded by the existing RiverHouse buildings.

In 2018, Amazon committed to establishing its east coast "HQ2" headquarters in Arlington County. In preparation for the anticipated growth associated with Amazon's arrival, the Board entered into a memorandum of agreement with certain Pentagon City property owners in January 2020 to conduct a planning study to update the PDSP. During the planning study, the Planning Commission led a focus group to obtain input from various key stakeholders, area property owners, civic associations, and renter organizations. The planning study culminated

_____

[1] Although the doctrine of judicial restraint would permit us to resolve this appeal solely on the public notice issue alone, we will address the other two issues for the purpose of resolving them should they arise again in future proceedings.

with the County's creation of a draft Pentagon City Sector Plan dated January 2022, which included proposals to amend the Arlington County Zoning Ordinance ("ACZO"), General Land Use Plan ("GLUP"), and Master Transportation Plan ("MTP").

On January 21 and 27, 2022, the Board published notice in the Washington Times announcing its proposal to adopt the Sector Plan and the amendments to the ACZO, GLUP, and MTP. The notice provided a one-paragraph descriptive summary of the proposed changes and announced that the Planning Commission and the Board would each hold a public hearing on the proposed changes. During a public hearing conducted by the Commission on February 2, 2022, the Commission voted unanimously in support of a motion to recommend that the Board adopt the Sector Plan and its associated amendments. On February 9, 2022, the Commission sent a letter to the Board summarizing the Commission's actions during the February 2 meeting and its recommendations to the Board. The letter was signed by the Commission Chair. On February 12, 2022, the Board held a public hearing on the proposed changes and voted unanimously to adopt the Sector Plan and its associated amendments.

The amendments to the GLUP redesignated the GLUP map's "Note #4" boundary as the Pentagon City Coordinated Redevelopment District ("PCCRD") and expanded the Note #4 boundary to include the RiverHouse property. The amendments to the ACZO created ACZO § 9.6 governing properties located in the PCCRD and amended ACZO § 6.5, which governs RA6-15 zoning districts, and ACZO § 7.12, which governs C-O-2.5 zoning districts. Under these ACZO amendments, properties located in an RA6-15 or C-O-2.5 zoning district that are also located in the PCCRD may be developed in accordance with the requirements of ACZO § 9.6. Under ACZO § 9.6.4., properties located in both the PCCRD and an RA6-15 zoning district—i.e., RiverHouse—may be developed to up to 150 dwelling units per acre and up to 350 feet in height, and properties located in both the PCCRD and a C-O-2.5 zoning district—i.e., the

PDSP property—may be developed to up to a 9.0 Floor Area Ratio ("FAR")[2] and up to 350 feet in height. The ultimate effect of the GLUP and ACZO amendments is a significant increase in the height and density limits for properties located in the PCCRD than would otherwise be permitted for properties located in an RA6-15 or C-O-2.5 zoning district in Arlington County.

On March 14, 2022, Rebh filed a four-count complaint for declaratory judgment and injunctive relief against the Board alleging that the Board's adoption of the Sector Plan and the amendments to the ACZO, GLUP, and MTP violated the Dillon Rule[3] and was void ab initio because (1) the Board adopted the Sector Plan and its associated amendments without the necessary resolution and certification from the Commission, in violation of Code §§ 15.2-2225 and -2226; (2) the Board provided insufficient public notice of the proposed amendments, in violation of Code § 15.2-2204(A); (3) the amendments violated the uniformity requirement under Code § 15.2-2282; and (4) the Board acted arbitrarily and capriciously. In the complaint, Rebh claimed that the increased height limits for buildings on the RiverHouse property would obstruct the Residents' views of Washington, DC and decrease the property values of their condominiums at the Representative and the Ridge House.

On April 15, 2022, the Board filed a demurrer and plea in bar to all counts of Rebh's complaint. The Board also filed a motion craving oyer requesting that the complete record of the

---

[2] "Floor Area Ratio" is a measure of the total building floor area on a site, including each floor, compared to the size of the site.

[3] The Dillon Rule is based on the principle that "local governing bodies 'have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable.'" *Sinclair v. New Cingular Wireless PCS, LLC*, 283 Va. 567, 576 (2012) (quoting *Marble Techs., Inc. v. City of Hampton*, 279 Va. 409, 417 (2010)). Under the Dillon Rule, "[i]f there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." *Id.* (quoting *Bd. of Supervisors v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995)). "In considering whether a local governing body had authority to enact an ordinance, there is no presumption that it is valid; if no delegation from the legislature can be found to authorize its enactment, it is void." *Id.*

Commission's February 2 and 9, 2022 actions and the Board's February 12, 2022 actions be made part of the pleadings. On June 29, 2022, the trial court entered a consent order granting the motion craving oyer. On December 1, 2022, the trial court held a nonevidentiary hearing on the demurrer and plea in bar. By final order dated January 10, 2023, the trial court sustained the Board's demurrer on all four counts. The trial court also issued a letter opinion explaining the reasoning for its decision. This appeal followed.

## ANALYSIS

On appeal, Rebh challenges the trial court's judgment as to the first three counts of his complaint regarding (1) the resolution and certification requirement under Code §§ 15.2-2225 and -2226, (2) the public notice requirement under Code § 15.2-2204(A), and (3) the uniformity requirement under Code § 15.2-2282. In evaluating a trial court's decision to sustain a demurrer, "[w]e accept as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts." *Glazebrook v. Bd. of Supervisors*, 266 Va. 550, 554 (2003). "Because appellate review of the sustaining of a demurrer involves a matter of law, we review the trial court's judgment *de novo*." *Id.*

Additionally, "[w]hether a locality has the power to act is a question of law subject to de novo review." *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023). "Issues related to the interpretation of statutes and ordinances also are questions of law subject to de novo review." *Id.* "When interpreting a statute or ordinance, 'our primary objective is "to ascertain and give effect to legislative intent," as expressed by the language used in the statute.'" *Id.* (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "'[W]e determine [that] intent from the words contained in the statute' or ordinance." *Id.* at 128 (alterations in original) (quoting *Williams v. Commonwealth*, 265 Va. 268, 271 (2003)). "[W]ords in a statute [or ordinance] are to be construed according to their ordinary meaning, given the context in which

- 5 -

they are used." *Id.* (alterations in original) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993)).

## I. Resolution and Certification

Code § 15.2-2225 provides that, upon approval by a local planning commission of a comprehensive plan or any part thereof, "the commission shall by *resolution* recommend the plan, or part thereof, to the governing body and a copy shall be *certified* to the governing body." Code § 15.2-2225 (emphases added). In turn, Code § 15.2-2226 provides that "[a]fter *certification* of the plan or part thereof," the governing body "shall act within 90 days of the local planning commission's recommending *resolution*." Code § 15.2-2226 (emphases added). A "resolution" is "[a] main motion that formally expresses the sense, will, or action of a deliberative assembly." *Resolution*, *Black's Law Dictionary* (11th ed. 2019); *see also Resolution*, *Webster's Third New International Dictionary* (2002) ("[A] formal expression of opinion, will, or intent by an official body or assembled group."). A "certification" is "[t]he act of attesting; esp., the process of giving someone or something an official document stating that a specified standard has been satisfied." *Certification*, *Black's Law Dictionary*, *supra*; *see also Certify*, *Webster's Third New International Dictionary*, *supra* ("[T]o confirm or attest often by a document under hand or seal as being true, meeting a standard, or being as represented.").

Here, the Commission's actions during its February 2, 2022 hearing, combined with its February 9, 2022 letter to the Board, satisfied the resolution and certification requirement under Code §§ 15.2-2225 and -2226. In its February 2 hearing, the Commission voted unanimously in support of a motion to recommend that the Board adopt nine attachments relating to the Sector Plan, ACZO, GLUP and MTP. In passing the motion, the Commission formally expressed its will as a deliberative assembly, thus performing a "resolution." And in its February 9 letter, the Commission recommended that the Board adopt the nine attachments, which were part of the

official electronic record maintained by the County and were posted on both the County's and Commission's websites. In conjunction with the Commission Chair's signature, the February 9 letter was an official document sent from the Commission to the Board attesting to the merit of the nine attachments, thus constituting a "certification" of the attachments by the Commission. Accordingly, the Board adopted the Sector Plan and its associated amendments with the requisite resolution and certification from the Commission, and the trial court did not err in sustaining the Board's demurrer as to count one of the complaint.

Rebh argues that the Commission's actions did not constitute a resolution and certification because the Commission did not specifically use the terms "resolution" and "certification" in the February 9 letter, but this argument elevates form over substance. Code §§ 15.2-2225 and -2226 contain no language specifically requiring these words to be invoked by a local planning commission for its actions to constitute a resolution and certification to the governing body, and we will not read such a requirement into these statutes. Rebh also argues that the nine attachments to the February 9 letter were not certified by the Commission to the Board because physical copies of these attachments were not attached to the February 9 letter. But Rebh again elevates form over substance. Code §§ 15.2-2225 and -2226 contain no language mandating any specific manner in which a copy of the plan being certified by a local planning commission must be transmitted or made available to the governing body. We will not read Rebh's preference for physical copies over electronic copies into these statutes absent any statutory language to that effect.

II. Public Notice

The version of Code § 15.2-2204 that was in effect at the time of the Board's actions in this case provided, in relevant part:

> Plans or ordinances, or amendments thereof, recommended or
> adopted under the powers conferred by this chapter need not be

> advertised in full, but may be advertised by reference. Every such advertisement *shall contain a descriptive summary of the proposed action* and a reference to the place or places within the locality where copies of the proposed plans, ordinances or amendments may be examined.

Code § 15.2-2204(A) (2022) (emphases added).[4]

In *Glazebrook v. Board of Supervisors*, the Supreme Court defined the "descriptive summary" requirement of Code § 15.2-2204(A) as "a statement that covers the main points concisely, but without detailed explanation, in a manner that serves to describe an object for the knowledge and understanding of others." 266 Va. at 554-55. The Court clarified that "the notice need not contain the full text of the proposed amendment, nor explain the proposed amendment in detail," but maintained that "[i]f the notice does not cover the main points of the proposed amendment and does not accurately describe the proposed amendment, it does not satisfy Code § 15.2-2204(A)." *Id.* at 555. The Court continued, "it is not enough to provide information that will merely direct readers to the physical location of the actual text of the proposed amendments. The 'descriptive summary' requirement goes beyond referral to the primary document." *Id.* at 556. The Court also remarked that "[t]here is no indication that the General Assembly expected affected citizens to engage in legal research in order to decide whether to participate in the hearing or to decide what their interests may be in a proposed amendment." *Id.* at 555. Applying these principles, the Court held that a county board's public notice that merely stated that "development standards" for certain zoning districts would be amended violated Code § 15.2-2204(A) because:

> No citizen could reasonably determine, from the notice, whether he or she was affected by the proposed amendments except in the most general sense of being located in a particular type of zoning

---

[4] The General Assembly amended Code § 15.2-2204 effective July 1, 2023, to remove the requirement that a public notice contain a "descriptive summary" of the proposed action. 2023 Va. Acts chs. 506-07. Neither party disputes that the earlier version of Code § 15.2-2204 in effect at the time of the Board's actions in this case should control the outcome of this appeal.

district.  Nor could a citizen determine whether the proposed amendments affected zoning issues that were of interest or concern to the citizen.  Given the number of issues subsumed under the heading "development standards," using that heading as a descriptive summary fails to inform citizens of the universe of possible zoning ordinance amendments in any meaningful way.

*Id.* at 556.

Subsequently, in *Gas Mart Corp. v. Board of Supervisors*, 269 Va. 334 (2005), the Court applied *Glazebrook* and held that a county board's public notice containing a proposal titled "Provisions to implement the Conservation Design policies in the Revised General Plan" failed to satisfy Code § 15.2-2204(A)'s descriptive summary requirement because:

> The name of the policies (i.e., "Conservation Design") provides the only clue regarding the Board's proposed action.  There is no description or summary of the content of those policies, and the notices do not indicate the particular areas of the County that would be affected by the proposed policies.  Clearly, the lone statement fails to cover the main points in a manner that informs the public regarding the content of the policies and the affected areas of the County.

*Id.* at 346-47.  The Court also held that the county board's statement in the public notice that "most of . . . the western portion of the County" would be rezoned was also insufficient under Code § 15.2-2204(A) because:

> In setting forth a description of the areas proposed to be rezoned, the Board failed to state any specific geographic boundaries or landmarks that would have allowed the public to ascertain the areas that would be affected by these amendments.  Thus, landowners were compelled to try to determine what the Board meant by "most of . . . the western portion of the County."

*Id.* at 347.

Here, the Board's January 21 and 27, 2022 public notices contained the following descriptive summary of the Board's proposed actions:

> Adoption of the Pentagon City Sector Plan and its associated amendments to the General Land Use Plan, Master Transportation Plan, and the Arlington County Zoning Ordinance.  The Pentagon

City Sector Plan (PCSP) includes an updated vision and planning principles for an area of Pentagon City which reflect current priorities identified by the community and builds upon earlier policy documents that have guided Pentagon City over the past decades. The Sector Plan defines conditions under which additional growth may be appropriate through an extensive development framework, design guidelines, and an implementation matrix that addresses subsequent efforts needed to achieve the Plan's goals. Through the use of diagrams, exhibits, and narrative, the PCSP establishes expectations for urban design, public spaces, and community benefits of new development in a balanced approach that considers certainty and flexibility. The Sector Plan also provides new emphasis on equity, biophilia, and strategic improvements to the public realm that would be delivered with near-term redevelopment opportunities. The associated amendments to the General Land Use Plan (GLUP), Master Transportation Plan (MTP), and Arlington County Zoning Ordinance (ACZO) help establish a regulatory framework for considering major site plan applications in this area that will implement the Sector Plan moving forward. *The GLUP amendments include an expansion of the Note #4 boundary, several land use designation changes within this area*, and the addition of multiple open space symbols indicating general location of future public spaces. The MTP amendments expand the areas planned for new streets to coincide with the boundaries of the Sector Plan and reclassify a segment of 12th Street South to align with its intended purpose more closely. The ACZO amendments establish site eligibility within the two zoning districts comprising the Sector Plan area and establish a new special planning area which would correlate between the updated GLUP Map and the Pentagon City Sector Plan.

(Emphases added).

Rebh argues that the Board's public notice did not satisfy Code § 15.2-2204(A)'s descriptive summary requirement because (1) the notice did not state that the proposed expansion of the GLUP map's Note #4 boundary would include the RiverHouse property, and (2) the notice did not state that the Board's proposal would include an increase in the height and density limits for buildings located in the geographic areas affected by the Board's proposed actions, including RiverHouse. We agree.

- 10 -

Under *Glazebrook* and *Gas Mart*, the Board's statement that "[t]he GLUP amendments include an expansion of the Note #4 boundary, [and] several land use designation changes within this area" was not sufficient to either (1) notify the public as to what specific geographic area would be affected by the Note #4 boundary expansion, or (2) notify the public as to the manner in which this geographic area would be affected. The Board's general reference to "several land use changes" is akin to the general references to "development standards" in *Glazebrook* and "Conservation Design policies" in *Gas Mart* that our Supreme Court held were not descriptive enough to inform the public in any meaningful way about the nature of the proposed changes. *Glazebrook*, 266 Va. at 556; *Gas Mart*, 269 Va. at 346-47. The Board's vague reference to an "expansion of the Note # 4 boundary" is also analogous to the vague reference to "most of . . . the western portion of the County" in *Gas Mart*. *Gas Mart*, 269 Va. at 347. By merely referring to an "expansion" of the Note #4 boundary without further detail, the descriptive summary could not sufficiently inform a member of the public as to which specific geographic area this expansion would affect. To obtain this information—as well as information about the nature of the land use changes—a member of the public would have had to refer to an external document apart from the public notice itself, an action that the *Glazebrook* Court disfavored. *Glazebrook*, 266 Va. at 555-56.

The Board argues that, under *Glazebrook*, Code § 15.2-2204(A)'s descriptive summary requirement does not require a county board to include every possible detail regarding its proposed actions and that such a requirement would be impractical. We agree with this argument in principle, as the *Glazebrook* Court made clear that "the notice need not contain the full text of the proposed amendment, nor explain the proposed amendment in detail." *Id.* at 555. But here, the level of detail that would have been required for the Board to satisfy the descriptive summary requirement would not have imposed an unreasonable burden on the Board or required

the Board to include an excessive level of detail in its descriptive summary. To satisfy the *Glazebrook* standard, the Board would have simply had to state that the "expansion of the Note #4 boundary" would "*include RiverHouse*," since this is the only property being affected by the expansion. Further, the Board would have simply needed to indicate that the "several land use changes" would "*increase the height and density limits*" for the affected properties.

"If the notice published by the Board did not meet the requirements of Code § 15.2-2204, the Board acted outside the authority granted by the General Assembly and the amendments are void *ab initio*." *Glazebrook*, 266 Va. at 554. Accordingly, since the Board did not satisfy the descriptive summary requirement of Code § 15.2-2204(A), the Board's adoption of the Sector Plan and the amendments to the GLUP, ACZO, and MTP is void ab initio, and the trial court erred in sustaining the Board's demurrer as to count two of the complaint.

### III. Uniformity

Code § 15.2-2282 provides that "[a]ll zoning regulations shall be *uniform* for each class or kind of buildings and uses throughout each district, but the regulations in one district may differ from those in other districts." Code § 15.2-2282 (emphasis added). "The crux of the uniformity requirement [under Code § 15.2-2282] is to assure that zoning regulations are nondiscriminatory." *Schefer v. City Council of Falls Church*, 279 Va. 588, 593 (2010). "[T]he uniformity requirement 'is in reality a statutory reaffirmation of the equal protection of the law guaranteed to all persons by the Fourteenth Amendment to the Constitution.'" *Id.* at 594 (quoting *Bell v. City Council of Charlottesville*, 224 Va. 490, 496-97 (1982)). However, "[u]niformity is not absolute and rational regulations based on different conditions within a zone are permissible so long as similarly situated property is treated the same." *Id.* (quoting *Rumson Estates, Inc. v. Mayor & Council of the Borough of Fair Haven*, 828 A.2d 317, 329-30 (N.J. 2003)).

In *Schefer v. City Council of Falls Church*, the Supreme Court held that, under Code § 15.2-2282, a city was permitted to apply different height regulations for one-family dwellings on "substandard" lots and one-family dwellings on "standard" lots, even though these lots fell under the same R1-B zoning district classification. 279 Va. at 594-95. In reaching this conclusion, the Court found that "this case is . . . about two 'kind[s]' of 'uses' as contemplated by Code § 15.2-2282, that is residential use on standard lots and residential use on substandard lots." *Id.* at 594-95 (second alteration in original). Thus, the Court held that the city's different treatment of substandard and standard lots in R1-B zoning districts did not violate the uniformity requirement because:

> There is no dispute that the City uniformly applies its building height regulations for one-family dwellings on standard lots and uniformly applies its building height regulations for one-family dwellings on substandard lots in the R1-B zoning district. In sum, . . . the building height regulations for one-family dwellings on all substandard lots are applied identically, and those regulations for one-family dwellings on standard lots are applied identically.

*Id.* at 595.

Rebh argues that the Board, in creating new height and density limits for properties in the PCCRD with an RA6-15 or C-O-2.5 zoning district classification, violated the uniformity requirement under Code § 15.2-2282 by treating these properties differently from properties located in other RA6-15 or C-O-2.5 zoning districts throughout Arlington County. We disagree.

Here, the Board, by redesignating the GLUP map's Note #4 boundary as the PCCRD, expanding the Note #4 boundary to include the RiverHouse property, and creating new PCCRD-related regulations in the ACZO, established new "uses" for the RA6-15 and C-O-2.5 zoning districts located in the PCCRD. Unlike the other RA6-15 and C-O-2.5 zoning districts throughout Arlington County, the RA6-15 and C-O-2.5 zoning districts in the PCCRD have their

own unique uses tied to the goals and purposes of the Sector Plan.[5]  Because the RA6-15 and C-O-2.5 zoning districts in the PCCRD have different uses than other RA6-15 and C-O-2.5 zoning districts throughout Arlington County, the Board's different treatment of the RA6-15 and C-O-2.5 zoning districts in the PCCRD does not violate Code § 15.2-2282's uniformity requirement.  *See Schefer*, 279 Va. at 594-95.  The PCCRD-related regulations in ACZO § 9.6 also apply uniformly to all properties located in both the PCCRD and an RA6-15 or C-O-2.5 zoning district, further demonstrating that the Board's actions do not violate the uniformity requirement.  *See id.* at 595.  Accordingly, the trial court did not err in sustaining the Board's demurrer as to count three of the complaint.[6]

---

[5] ACZO § 9.6.1 states:

> The purpose of the Pentagon City Coordinated Redevelopment District is to encourage mixed-use development of office, retail and service commercial, hotel and multi-family dwelling uses within the area designated as the Pentagon City Coordinated Redevelopment District on the General Land Use Plan.  The goal of this district is to advance the vision of the Pentagon City Plan, including: A. The creation of a dynamic downtown for Arlington and the region, and a neighborhood where everyone is welcome and able to live regardless of race, income, age, and immigration status; and B. The redevelopment of Pentagon City that strengthens the entire 22202 community, diversifies housing options, and embraces biophilic design that makes nature a universal part of the everyday experience of the area.

ACZO § 9.6.3 states that the Board may permit additional height and density limits for properties in the PCCRD above that typically allowed for RA6-15 and C-O-2.5 zoning districts only where "[t]he development project helps achieve the Planning Principles specified in the Pentagon City Sector Plan," "[t]he development project is consistent with other applicable policy guidance for the [PCCRD]," and "[t]he development project adheres to the development framework identified in the Pentagon City Sector Plan."

[6] Rebh also argues that the trial court erred in sustaining the Board's demurrer on count three because the trial court erroneously determined that the Board, in amending the GLUP and ACZO, created two wholly new zoning districts in Arlington County.  We conclude that "the best and narrowest ground for decision is the determination that the trial court reached the right result for a reason different than the one upon which it appears ultimately to have relied." *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020).

CONCLUSION

In summary, we hold that the Board did not violate the resolution and certification requirement under Code §§ 15.2-2225 and -2226 nor the uniformity requirement under Code § 15.2-2282, but the Board violated the public notice requirement under Code § 15.2-2204. Accordingly, we reverse the trial court's judgment and enter final judgment for Rebh, declaring the Board's adoption of the Pentagon City Sector Plan and the amendments to the ACZO, GLUP, and MTP void ab initio.

*Reversed and final judgment.*